JAMES BENINTENDI et al., Appellants and Respondents, *v.* KENTON HOTEL, INC., Defendant, and JOHN B. DONDERO et al., Respondents and Appellants.

Submitted January 2, 1945; decided April 5, 1945.

*J. Leonard Stoll* for plaintiffs-appellants and respondents. The requirement of unanimous vote of stockholders for the election of directors and the requirement of unanimous vote of stockholders for the enactment of stockholders' resolutions are valid. (*Clark* v. *Dodge,* 269 N. Y. 410; *Driscoll* v. *West*

*Bradley & C. M. Co. et al.,* 59 N. Y. 96; *Nat. League of Commission Merchants* v. *Hornung,* 72 Misc. 181; *Pearlman* v. *Aaronson-Caplin Co.,* N. Y. L. J., July 12, 1940, p. 91; *Carney* v. *Penn Realty Co.,* 174 App. Div. 86; *Cuppy* v. *Ward,* 187 App. Div. 625 (dis. op.); *Kassel* v. *Empire Tinware Co.,* 178 App. Div. 176; *Peo. ex rel. McLaughlin* v. *Police Comrs.,* 174 N. Y. 450; *Sentenis et al.* v. *Ladew et al.,* 140 N. Y. 463; *Matter of Pet. of N. Y., L. & W. R. R. Co.,* 98 N. Y. 447; *Matter of the Petition of Hughes,* 93 N. Y. 507; *The People* v. *Brooklyn, F. & C. I. R. Co.,* 89 N. Y. 76; *People of the State of N. Y.* v. *Quigg,* 59 N. Y. 83; *Phyfe* v. *Eimer,* 45 N. Y. 102; *Isham* v. *Buckingham,* 49 N. Y. 216; *Hull* v. *Hull,* 172 App. Div. 287.)

*Jacob A. Singer* and *Isidore Slute* for defendants-respondents and appellants. I. From the facts found by the trial court, it does not legally follow that a special meeting of stockholders of Kenton Hotel, Inc., was held on March 11, 1941, at which special meeting it is alleged the amendments to the by-laws of the said corporation were passed. II. The amended by-laws if they exist, are invalid as a matter of law. (*Matter of the American Fibre Chair Seat Corp.,* 265 N. Y. 416; *Harris* v. *Magrill,* 131 Misc. 380; *Matter of Boulevard Theatre & Realty Co.,* 195 App. Div. 518, 231 N. Y. 615; *Matter of Keogh, Inc.,* 192 App. Div. 624; *Matter of Rapid Transit Ferry Co.,* 15 App. Div. 530; *Reiss* v. *Levy,* 175 App. Div. 938; *Field* v. *Field,* 9 Wend. 394; General Corporation Law, §§ 22, 23.) III. Section 28 of the General Corporation Law clearly provides for a requirement for by-law, such as the by-law herein, that unanimous vote of directors be required. (*Levin* v. *Meyer,* 86 Misc. 116.) IV. There is no statute which attempts to regulate or limit the right of the stockholders to fix the percentage of vote required to amend their by-laws.

Desmond, J. Two men who owned, in inequal amounts, all the stock of a domestic business corporation, made an agreement to vote for, and later did vote for and adopt at a stockholders' meeting, by-laws of the corporation, providing as follows: 1. That no action should be taken by the stockholders except by unanimous vote of all of them; if, however, thirty days' notice of the meeting had been given, unanimous vote of the stockholders present in person or by proxy should be sufficient;

2. That the directors of the corporation should be the three persons receiving, at the annual stockholders' meeting, the unanimous vote of all the stockholders; 3. That no action should be taken by the directors except by unanimous vote of all of them; 4. That the by-laws should not be amended except by unanimous vote of all the stockholders. The minority stockholder brought this suit to have those by-laws adjudged valid and to enjoin the other stockholder from doing anything inconsistent therewith. Special Term and the Appellate Division held that the two by-laws first above described were invalid and the other two valid. Both sides have appealed to this Court.

In striking down the by-law (No. 2 above) which requires unanimous stock vote for election of directors, Special Term properly relied upon *Matter of Boulevard Theatre & Realty Co.* (195 App. Div. 518, affd. 231 N. Y. 615). This Court wrote no opinion in that case. The Appellate Division had ruled, however, that a provision in the Boulevard Theatre's certificate of incorporation requiring unanimous vote of all stockholders to elect directors, violated section 55 of the Stock Corporation Law, which says that directors shall be chosen " by a plurality of the votes at such election ". We think it unimportant that the condemned provision was found in the certificate of incorporation in the *Boulevard Theatre* case, and in a by-law in the present case, or that the attack on the provision is in this case made by a stockholder who agreed to vote for it and did vote for it. In 1897 a similar by-law was invalidated in *Matter of Rapid Transit Ferry Co.* (15 App. Div. 530). The device is intrinsically unlawful because it contravenes an essential part of the State policy, as expressed in the Stock Corporation Law. An agreement by a stockholder to vote for certain persons as directors is not unlawful (*Clark* v. *Dodge*, 269 N. Y. 410, 415) since the directors are still, under such an agreement, elected by a plurality of votes, as the statute mandates. But a requirement, wherever found, that there shall be no election of directors at all unless every single vote be cast for the same nominees, is in direct opposition to the statutory rule — that the receipt of a plurality of the votes entitles a nominee to election.

Although not covered by the *Boulevard Theatre* case, or any other decision we have found, the by-law (No. 1 above) which

requires unanimous action of stockholders to pass any resolution or take any action of any kind, is equally obnoxious to the statutory scheme of stock corporation management. The State, granting to individuals the privilege of limiting their individual liabilities for business debts by forming themselves into an entity separate and distinct from the persons who own it, demands in turn that the entity take a prescribed form and conduct itself, procedurally, according to fixed rules. As Special Term pointed out in this case, the Legislature, for reasons thought by it to be sufficient, has specified the various percentages of stock vote necessary to pass different kinds of resolutions. For instance, sections 36 and 37 of the Stock Corporation Law require an affirmative two-thirds vote for changing the capitalization, while section 102 of the General Corporation Law empowers the holders of a majority of the stock to force the directors to dissolve the corporation, and section 103 of that law gives the same power to holders of half the stock, if there be a deadlock on the question of dissolution. Any corporation may arrive at a condition where dissolution is the right and necessary course. The Legislature has decided that a vote of a majority of the shares, or half of them in case of a deadlock, is sufficient to force a dissolution. Yet under the by-laws of this corporation, the minority stockholder could prevent dissolution until such time as he should decide to vote for it. Those who own all the stock of a corporation may, so long as they conduct the corporate affairs in accordance with the statutory rules, deal as they will with the corporation's property (always assuming nothing is done prejudicial to creditors' rights). They may, individually, bind themselves in advance to vote in a certain way or for certain persons. But this State has decreed that every stock corporation chartered by it must have a representative government, with voting conducted conformably to the statutes, and the power of decision lodged in certain fractions, always more than half, of the stock. That whole concept is destroyed when the stockholders, by agreement, by-law or certificate of incorporation provision as to unanimous action, give the minority interest an absolute, permanent, all-inclusive power of veto. We do not hold that an arrangement would necessarily be invalid, which, for particular decisions, would require unanimous con-

sent of all stockholders. (See for instance, *Ripin* v. *U. S. Woven Label Co.,* 205 N. Y. 442; *Tompkins* v. *Hale,* 284 N. Y. 675.) In *Tompkins* v. *Hale* (*supra*) the stockholders of a " cooperative apartment house " had agreed in writing that such leases could be canceled and surrendered only if all the stockholder-tenants concurred. That is a far cry from a by-law which prohibits any nonunanimous determination on any corporate question.

The by-law numbered 3 in our list above makes it impossible for the directors to act on any matter except by unanimous vote of all of them. Such a by-law, like the others already discussed herein, is, almost as a matter of law, unworkable and unenforcible for the reason given by the Court of King's Bench in *Dr. Hascard* v. *Dr. Somany,* 1 Freeman 503, in 1693 : " *prima facie* in all acts done by a corporation, the major number must bind the lesser, or else differences could never be determined ". The directors of a corporation are a select body, chosen by the stockholders. By section 27 of the General Corporation Law, the board as such, is given the power of management of the corporation. At common law only a majority thereof were needed for a quorum and a majority of that quorum could transact business. (*Ex parte Willcocks,* 7 Cow. 401.) Section 27 modifies that common-law rule only to the extent of permitting a corporation to enact a by-law fixing " the number of directors necessary to constitute a quorum at a number less than a majority of the board, but not less than one-third of its number." Every corporation is thus given the privilege of enacting a by-law fixing its own quorum requirement at any fraction not less than one-third, nor more than a majority, of its directors. But the very idea of a " quorum " is that, when that required number of persons goes into session as a body, the votes of a majority thereof are sufficient for binding action. (See for example, *Harroun* v. *Brush Electric Light Co.,* 152 N. Y. 212, as to a quorum of the Appellate Division.) Thus, while by-law No. 3 is not in explicit terms forbidden by section 27 (*supra*) it seems to flout the plain purpose of the Legislature in passing that statute. We have not overlooked section 28 of the General Corporation Law, the first sentence of which is as follows : " Whenever, under the provisions of any corporate law a corporation is authorized to take any action by its directors, action

may be taken by the directors, regularly convened as a board, and acting by a majority of a quorum, except when otherwise expressly required by law or the by-laws and any such action shall be executed in behalf of the corporation by such officers as shall be designated by the board.'' Reading together sections 27 and 28 and examining their legislative history (see L. 1890, ch. 563; L. 1892, ch. 687; L. 1904, ch. 737), we conclude that there never was a legislative intent so to change the common-law rule as to quorums as to authorize a by-law like the one under scrutiny in this paragraph. A by-law requiring for every action of the board not only a unanimous vote of a quorum of the directors, but of all the directors, sets up a scheme of management utterly inconsistent with sections 27 and 28.

Before passing to a consideration of the fourth disputed by-law, we comment here on a view expressed in the dissenting opinion herein. The dissenting Judges conclude that, while the two by-laws first herein discussed are invalid as such because violative of statutes, the courts, should, nevertheless, enforce as against either, stockholder the agreement made by both of them and which finds expression in those by-laws. The substance of that stockholders' agreement was, as the dissenting opinion says, that neither stockholder would vote his stock in opposition to the stock of the other. Each stockholder thus agreed that he would conform his opinion to that of his associate on every occasion, or, absent such accord, that neither would vote at all on any occasion. We are at a loss to understand how any court could entertain a suit, or frame a judgment, to enforce such a compact (see *St. Regis Paper Co.* v. *Hubbs & Hastings P. Co.,* 235 N. Y. 30, 36; *Sun P. & P. Assn.* v. *Remington P. & P. Co.,* 235 N. Y. 338, 345, re '' agreements to agree '').

The fourth by-law here in dispute, requiring unanimity of action of all stockholders to amend the by-laws, is not, so far as we can find, specifically or impliedly authorized or forbidden by any statute of this State. Nor do we think it involves any public policy or interest. Every corporation is empowered to make by-laws (General Corporation Law, § 14, subd. 5), and by-laws of some sort or other are usually considered to be essential to the organization of a corporation. But a corporation need not provide any machinery at all for amending its by-laws — and for such an omission it could not be accused of

an attempt to escape from the regulatory framework set up by law. A corporation, to function as such, must have stockholders and directors, and action and decision by both are required for the conduct of corporate business. The State has an interest in seeing to it that such " private laws " or by-laws as the corporation adopts are not inconsistent with the public law and not such as will turn the corporation into some other kind of entity. But, once proper by-laws have been adopted, the matter of amending them is, we think, no concern of the State. We, therefore, see no invalidity in by-law numbered 4 above.

The judgment should be modified in accordance with this opinion, and, as so modified, affirmed, without costs.

CONWAY, J. (dissenting). Three men, in 1928, agreed to form a corporation, in place of a partnership theretofore existing, in order to operate a lodging-house on the Bowery in New York City under a leasehold. The corporation was to be known as Kenton Hotel, Inc. It was provided that if agreement could not be had among them as to the contents of the Certificate of Incorporation and as to the election of officers, a partnership agreement should be executed. The three men were the plaintiff, James Benintendi, the defendant, John Dondero, and one Schiffino. Twenty-five percent of the 100 shares of capital stock was allotted to Benintendi, while the balance was equally divided between the other two.

In 1935, difficulties arose among the three over the alleged purchase by Schiffino, in his wife's name, of a further or other lease of the hotel premises. As a result, an agreement was entered into between Benintendi and Dondero, in August, 1935, providing that neither would sell any of his stock without the other's consent in writing but that they would use their " best endeavors and resources " to purchase the outstanding $37\frac{1}{2}\%$ of the stock and sell to each other, as necessary, sufficient of such outstanding stock at $100 a share as would equalize their holdings in the corporation. Later, in 1940, a special meeting of stockholders was held, and Schiffino was dropped as an officer. Subsequently there were negotiations looking toward the return of Schiffino as an officer and on January 24, 1941, the three again entered into an agreement. That agreement provided, at the suggestion of Schiffino's lawyer, that the by-laws of the

corporation be amended so as to provide for unanimous action on the part of the three in substantially the language which we shall quote from the minutes of the stockholders' meeting of March 11, 1941. Under that agreement, each of the three was to receive one-third of the distributed income. Schiffino, on the same day, offered his stock for sale to Benintendi and Dondero. The letter containing that offer stated that if the option were not exercised, he would transfer 4 1/6 shares to Benintendi and Dondero (thus reducing his stock ownership to 33⅓ shares) and that, in that event, the agreement as to unanimity of action should become operative and a meeting of stockholders and directors should be held to adopt the amendments of the by-laws accordingly. In July of 1941, an attorney who represented either the corporation or Dondero, but who was called as a witness by Benintendi, exercised the option to purchase Schiffino's stock on behalf of Benintendi and Dondero. It seems clear that the agreement of January 24, 1941, was to become effective only if Schiffino remained a stockholder. The alternative was the purchase of his stock under the option. When the option was exercised, it was on the understanding that a relative of Benintendi was to become the purchaser. That fell through and Schiffino's stock was subsequently transferred to Dondero. Prior to that, however, the idea as to unanimity of action having been evolved by Schiffino's lawyer, Benintendi and Dondero adopted it and agreed to evidence it by amendments to the by-laws. That was done at the meeting of March 11, 1941. In substance their agreement was that neither would vote his stock in opposition to the stock of the other and thus cause corporate action contrary to the wishes of the other. The transfer from Schiffino to Dondero, together with other transfers which we need not detail, made Benintendi the owner of one-third of the stock and Dondero the owner of two-thirds of the stock, although the agreement of August, 1935, provided that Benintendi and Dondero were to endeavor to " accomplish " an equal ownership of stock between them in the event of their purchase of the outstanding stock. In view of that the two men agreed, in addition to the amendment of the by-laws, that Dondero should receive twice as much in salary as Benintendi and should devote twice as much time to the business.

The sale of Schiffino's stock was effected on March 11, 1941; Benintendi and Dondero were elected directors, salaries and working hours were fixed and the by-laws were amended as agreed.

In that setting, we shall now examine the four amendments to the by-laws. They are as follows:

" Art. I. Section 4. VOTING: At all meetings of the stockholders whether regular or special and whether or not in any other manner or percentage as provided by law, or regulated by statute, in general or for any specific vote, or any specific question, no resolution shall be adopted except by a unanimous vote of the stock of the Corporation issued and outstanding. Save, however, unless at least thirty days' notice of the meeting, has been given by registered mail, addressed to the stockholders of record, in which event the unanimous vote of the stock present in person or by proxy shall be sufficient."

" Art. II. Section 2. How ELECTED: At the annual meeting of Stockholders, the three persons receiving a unanimous vote of all the stock of the Corporation issued and outstanding shall be directors."

" Art. II. Section 10. VOTING AT MEETINGS OF THE BOARD OF DIRECTORS: No resolution of the Corporation at any meeting, whether regular or special, shall be adopted except by the unanimous vote of the three directors duly elected as provided herein. However, should any director become incapacitated or die or absent himself from such meeting, then the two remaining directors may adopt any resolutions necessary to the carrying on of the business of the Corporation at any meeting duly called, provided that at least thirty days' notice by registered mail, directed to the last known address of the directors of such meeting and of the resolutions to be amended and to be voted upon is given to all directors."

" Art. VIII. Section 1. How AMENDED: These By-Laws may be altered, amended or repealed by the affirmative vote of the stockholders representing all of the issued capital stock at an annual or at a special meeting called for that purpose, but provided that a written notice shall have been sent to the stockholders of record by registered mail, at his last known post office address, at least ten days before the date of such annual or special meeting, which notice shall state the alterations, amend-

ments or changes which are proposed to be made in such By-Laws. Only such changes as shall have been specified in the notice shall be made. If, however, all the stockholders shall be present at any regular or special meeting, either in person or by proxy, then these By-Laws may be amended by a unanimous vote, without any previous notice."

Under those by-laws, the agreement, as evidenced by the business of the corporation continued from March 11, 1941, until the receipt of a notice by Benintendi of the calling of a special meeting of the stockholders to be held on June 4, 1942, for the purpose of " annulling " any record of the meeting of March 11, 1941, upon the ground that the Donderos had received no notice of it and were not present thereat. Thereupon, this action in equity was instituted to have the by-laws as amended declared to be valid and to enjoin the defendants Dondero from conducting any election, adopting any resolution as stockholders or directors or repealing or amending the by-laws in any manner inconsistent with the amendments adopted on March 11, 1941. The trial court found the facts in favor of plaintiffs Benintendi (James Benintendi being the legal owner of stock standing in his own name and the beneficial owner of that in his mother's name). The question presented to us is whether the two owners of the entire stock in Kenton Hotel, Inc. (Dondero being the beneficial owner of the stock standing in his wife's name) had the power to amend the by-laws as they did.

The owners of 100% of the stock of a corporation may do with it as they will, even to giving it away, provided the rights of creditors are not involved and the public policy of the State is not offended. (*Clark* v. *Dodge,* 269 N. Y. 410; *Matter of American Fibre Chair Seat Corp.,* 265 N. Y. 416; *Ripin* v. *U. S. Woven Label Co.,* 205 N. Y. 442, 448; *Little* v. *Garabrant,* 90 Hun 404, affd. on opinions below, 153 N. Y. 661; *H. & G. M. Co.* v. *H. & W. M. Co.,* 127 N. Y. 252, 258; *Rafter* v. *Fox Publishing Co.,* 238 N. Y. 567; *Drucklieb* v. *Harris,* 209 N. Y. 211; *Prindiville* v. *Johnson & Higgins,* 93 N. J. Eq. 425; *Breslin* v. *Fries-Breslin Co.,* 70 N. J. L. 274; *New England Trust Co.* v. *Abbott* [*Mass.*], 38 N. E. 432; *Tompkins* v. *Hale,* 172 Misc. 1071, affd. 259 App. Div. 860, affd. 284 N. Y. 675.)

The general rule could be no more succinctly stated than in *Matter of American Fibre Chair Seat Corp.* (LEHMAN, J.,

265 N. Y. 416, 421) (where there was unanimous stock action) as follows: " Where no rights of third parties are involved and no public policy of the State violated, the courts will give effect to the agreement of the stockholders and the corporate resolution."

In *Ripin* v. *U. S. Woven Label Co.* (*supra*), the charter of the corporation provided that the number of directors should not be changed except by unanimous consent of all the stockholders and that provision was held to be a valid and binding limitation on the power of the corporation, notwithstanding the provisions of the then section 21 of the Stock Corporation Law, which declared that the number of directors might be increased or reduced by holders of a majority of the stock. The decision rested upon the express provisions of section 10 of the General Corporation Law: " The certificate of incorporation of any corporation may contain any provision for the regulation of the business and the conduct of the affairs of the corporation, and any limitation upon its powers, or upon the powers of its directors and stockholders, which does not exempt them from the performance of any obligation or the performance of any duty imposed by law." This, despite the fact that it was not made to appear that all of the stockholders had agreed that the number of directors should not be changed except by their unanimous consent.

In *Clark* v. *Dodge* (*supra*) (CROUCH, J.), we said, pp. 415–416: " If the enforcement of a particular contract damages nobody — not even, in any perceptible degree, the public — one sees no reason for holding it illegal, *even though it impinges slightly upon the broad provision of section 27*. Damage suffered or threatened is a logical and practical test, and has come to be the one generally adopted by the courts. (See 28 Columbia Law Review, 366, 372.) Where the directors are the sole stockholders, there seems to be no objection to enforcing an agreement among them to vote for certain people as officers. There is no direct decision to that effect in this court, yet there are strong indications that such a rule has long been recognized. The opinion in *Manson* v. *Curtis* (223 N. Y. 313, 325) closed its discussion by saying: ' The rule that all the stockholders by their universal consent may do as they choose with the corporate concerns and assets, provided the interests of creditors

are not affected, because they are the complete owners of the corporation, cannot be invoked here.' That was because all the stockholders were not parties to the agreement there in question. So, where the public was not affected, ' the parties in interest, might, by their original agreement of incorporation, limit their respective rights and powers,' even where there was a conflicting statutory standard. (*Ripin* v. *U. S. Woven Label Co.*, 205 N. Y. 442, 448.)" (Emphasis supplied.)

In *Little* v. *Garabrant* (90 Hun 404, opinion by PARKER, J., later Ch. J. of this court, affd. on opinions below in 153 N. Y. 661), it was held that with the consent of all the stockholders and with no rights of creditors involved, the corporate assets might be *given away*. The court there said, pages 407, 408, after stating the rule and the reason for it: " As one of the results of this rule Mr. Morawetz, in his work on Corporations (§ 625), asserts that ' if the directors of a corporation apply the funds of the company to their own use, or misapply them in any manner, the excess of authority, as between the directors and the corporation, may be cured by the unanimous consent or ratification of the stockholders.' "

Clearly nothing could be more against public policy or the public interest than larceny or conversion and yet unanimous consent or ratification validates even such acts.

Despite that power of 100% of the stockholders, they may not write into a certificate of incorporation nor adopt in by-laws provisions contrary to applicable statutes. Since corporations are creatures of statute, their charters and by-laws must conform to the will of the creating power. (*Ripin* v. *U. S. Woven Label Co., supra; Matter of Boulevard Theatre & Realty Co.*, 195 App. Div. 518, affd. 231 N. Y. 615; *Lorillard* v. *Clyde et al,* 86 N. Y. 384.) For that reason we think that the amendments to article I, section 4, and article II, section 2, were beyond the power of the stockholders since they contravene General Corporation Law, sections 102 and 103, and Stock Corporation Law, sections 35-c, 36, 55, 86-b, 105-c.

The amendment to article II, section 10, appears to be proper under General Corporation Law, sections 27 and 28. Those sections are in part as follows and show clearly by the portions we have italicized that the amendment was permissible:

" 27. DIRECTORS; QUALIFICATIONS; POWERS OF MAJORITY.

" The business of a corporation shall be managed by its board of directors, all of whom shall be of full age and at least one of whom shall be a citizen of the United States and a resident of this state. *Unless otherwise provided* a majority of the board at a meeting duly assembled shall be necessary to constitute a quorum for the transaction of business and the act of a majority of the directors present at such a meeting shall be the act of the board. The by-laws may fix the number of directors necessary to constitute a quorum at a number less than a majority of the board, but not less than one-third of its number. * * * ." (Emphasis supplied.)

" 28. ACTS OF DIRECTORS.

" Whenever, under the provisions of any corporate law a corporation is authorized to take any action by its directors, action may be taken by the directors, regularly convened as a board, and acting by a majority of a quorum, *except when otherwise expressly required by law or the by-laws and any such action* shall be executed in behalf of the corporation by such officers as shall be designated by the board. Any business may be transacted by the board at a meeting at which every member of the board is present, though held without notice." (Emphasis supplied.)

The amendment to article VIII, section 1, is not forbidden by any statute.

The question is then presented whether the *agreement* between the parties as to the manner in which they would vote their stock may be specifically enforced through the injunctive process of an equity court *in forbidding a breach of it by Dondero* even though validity may not be accorded to the first two attempted amendments. We think it may. Benintendi and Dondero agreed together as to the manner in which they would vote their respective stock interests. To implement their agreement they chose a method forbidden by statute. The agreement, however, was valid without the method chosen. Both of the parties have lived up to and under that agreement for more than a year. We granted specific performance of an agreement in *Clark* v. *Dodge (supra)*, to vote for a single-named director — certainly a more drastic limitation upon the power of a stockholder than the limitation here.

In *New England Trust Co.* v. *Abbott* (*supra*), the court dealt with a by-law assented to by all of the stockholders. In upholding it as a *binding contract,* the court said: " The defendant contends that these by-laws are void. We have not found it necessary to consider that question, and we express no opinion upon it. We think that the case may well stand on the ground that the defendant's testator entered into an agreement with the plaintiff to do what the plaintiff now seeks to compel his executor to do. It is manifest that a stockholder may make a contract with a corporation to do or not to do certain things in regard to his stock, or to waive certain rights, or to submit to certain restrictions respecting which the stockholders might have no power of compulsion over him. In *Adley* v. *Whitstable Co.,* 17 Ves. 315, 322, Lord ELDON says: ' It has been frequently determined that what may well be made the subject of a contract between the different interests of a partnership would not be good as a by-law. For instance, an agreement among the citizens of London that they would not sell except in the markets of London would be good; yet it has been declared by the legislature that a by-law to that effect is void.' See also, *Davis* v. *Proprietors, etc.,* 8 Metc. (Mass.) 321; *Bank of Attica* v. *Manufacturers' & Traders' Bank,* 20 N. Y. 505; 6 Cook, Stocks & S. § 408."

We think that the emphasis should be placed upon the fact that this is an appeal to the equity power of the court. That power may be invoked in a proper case to ameliorate the rigors or rigidity of the law. Equity ofttimes alleviates hardship and prevents injustice in a specific case where the law is unable to do so since it speaks in terms of general rules. The distinction was well pointed out in *Breslin* v. *Fries Breslin Co.* (*supra*), (a case involving 100% stock action), as follows: " In the eye of the *law* corporations are entities separate and distinct from their constituent members and not bound by the individual acts of the latter. The *law* deals with the corporation as an artificial person. *Equity* realizes that this legal entity is but a legal fiction; looking through the form it discerns the substance. It finds that a stock corporation is in essence an aggregation of individuals, a statutory partnership with assignable membership and limited liability of the members, and so the doctrine of equitable estoppel applies fully to all the

internal concerns of stock companies. Saving so far as public policy and the interests of creditors and other third parties are concerned (none of which is involved in the present case), 'the stockholders may bind themselves *inter sese* and in favor of the corporation by their own acts and agreements, and what will bind *all* the stockholders, with respect to an obligation from the company to one of its members, will bind the company as such.''

There are here no rights of creditors involved. A totality of stockholders may agree among themselves as to how they shall or shall not vote shares of stock owned by them. They may by agreement waive or relinquish as between themselves statutory rights where such waiver or abandonment is not contrary to the public interest. There is here no question of public policy. The State does not need the assistance or leadership of Dondero in vindicating its public policy. That statement is but a paraphrase of the words of GUMMERE, Ch. J., in *Prindiville* v. *Johnson & Higgins (supra)*, although in a different situation as follows:

" * * * Stated, shortly, his position is this: Having for some eight years participated in the carrying out of this fraudulent scheme and reaped the benefits thereof, he now seeks, either for his own personal benefit or as the self-constituted representative of the state, to have this fraudulent scheme ended and our state laws and policies vindicated.

" So far as the vindication of our laws and policies is concerned, it is enough to say that the state does not need his aid for any such purpose, and that his assumed status as a representative of the state cannot be recognized.

" If we consider him as a mere individual, seeking to repudiate for his own personal advantage a fraud upon the state in which he was so long a participant, it is entirely settled that the court of chancery is not open to him for any such purpose. * * * * ''

The order should be modified in accordance herewith, with costs to the plaintiffs in the Appellate Division and in this court.

LEHMAN, Ch. J., LOUGHRAN and LEWIS, JJ., concur with DESMOND, J.; CONWAY, J., dissents in opinion in which THACHER and DYE, JJ., concur.

Judgment accordingly.