403 So.2d 187 (1981)
John T. ROACH, Jr. and The Legal Center, Inc., a corporation
v.
Frank K. BYNUM and James D. Forstman, individually and as majority stockholders of The Legal Center, Inc., a corporation.
78-765.
Supreme Court of Alabama.
August 7, 1981.
*188 William H. Mills of Redden, Mills & Clark, Birmingham, for appellants.
Hobart A. McWhorter, Jr. and Robert K. Spotswood of Bradley, Arant, Rose & White, Birmingham, for appellees.
PER CURIAM.
This is an appeal from John Roach, Jr., from an order granting the dissolution of a corporation, appointing a receiver, and denying a counterclaim. We affirm in part, and reverse in part.
The Legal Center, Inc., was formed in 1968 by Roach, his wife and Hjalma Johnson, the three of whom were Legal's only shareholders and directors. In the interim between 1968 and 1975, during which time the corporation remained dormant, Roach's wife and Johnson surrendered their holdings and resigned their positions as directors, thus leaving Roach as the sole shareholder and director. On May 15, 1975, Roach held a shareholder meeting and, as Legal's sole shareholder, adopted new bylaws which provided, inter alia:

ARTICLE IV

QUORUM AND VOTING OF STOCK
Section 1. The holders of 70 percent of the shares of stock issued and outstanding and entitled to vote, represented in person or by proxy, shall constitute a *189 quorum at all meetings of the shareholders for the transaction of business. * * *
Section 2. If a quorum is present, the affirmative vote of 70 percent of the shares of stock represented at the meetings shall be the act of the shareholders unless the vote of a greater number of shares is required by law. * * *
* * * * * *
(e) Any amendment, alteration, modification or repeal of any provision of the Articles of Incorporation or By-laws of this Corporation must be approved by the affirmative vote of 70 percent of all the shareholders of the corporation.
* * * * * *
ARTICLE VI
MEETINGS OF THE BOARD OF DIRECTORS
* * * * * *
Section 6. 70 percent of the directors shall constitute a quorum for the transaction of business unless the vote of a greater number of directors is required by law. The act of 70 percent of the directors present at any meeting at which a quorum is present shall be the act of the Board of Directors, unless the act of a greater number is required by statute. If a quorum shall not be present at any meeting of directors, the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.
* * * * * *
ARTICLE IX
OFFICERS
* * * * * *
THE PRESIDENT
Section 6. The President shall be the chief executive officer of the corporation, shall preside at all meetings of the shareholders and the Board of Directors, shall have general and active management of the business of the corporation and shall see that all resolutions of the Board of Directors made in accordance with these By-Laws are given due consideration.
Section 7. He shall execute bonds, notes, mortgages and other contracts requiring a seal, under the seal of the corporation, except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof shall be expressly delegated by the Board of Directors by their affirmative vote of 70 percent to some other officer or agent of the corporation.
* * * * * *
ARTICLE XII
AMENDMENTS
Section 1. These By-Laws may be altered, amended or repealed or new By-Laws adopted at any regular or special meeting of the shareholders at which a 70 percent quorum is present or represented, by the affirmative vote of 70 percent of all the stock of this corporation entitled to vote, provided notice of the proposed alteration, amendment or repeal be contained in the notice of such meeting.
During the same shareholder meeting in which these bylaws were adopted, Roach elected himself and James Forstman to serve as Legal's directors. Upon conclusion of the shareholder meeting, a meeting of the board of directors was held during which Roach was elected to serve as President/Treasurer and Forstman was elected to serve as Vice President/Secretary. By resolution of the directors, the ownership of the corporation was then realigned so that Roach and Forstman each owned 500 shares of Legal's stock. Roach was also "authorized and empowered to procure, at the expense of the corporation, all necessary services, insurance, commitments for loans and any and all other things necessary and incident to the construction of an office building to be located in Homewood, Alabama."
Roach and Forstman then executed a shareholder agreement which obligated each of them to (1) vote for each other as Legal's directors; (2) vote for Roach as President/Treasurer and Forstman as Vice *190 President/Secretary; (3) require the other shareholders or directors to either rescind their vote or cause the corporation to purchase the dissenting shareholder's stock in the event action was taken or authorized by a vote of less than fifty-one percent of the shareholders or directors; (4) provide one-half of the funds "necessary to meet all mortgage payments, tax payments, maintenance costs, insurance, and any and all expenses necessary and incidental to the construction, ownership, operation and maintenance of an office building; (5) sell his shares to Legal in the event that the shareholder failed or refused to pay one-half of the expenses; (6) offer his shares to Legal at an agreed upon price before offering to transfer his shares to any person other than the present stockholders; and (7) submit to arbitration any disagreement which might arise from the terms of the shareholder agreement.
Both Roach and Forstman contributed $14,000.00 towards the construction costs of a building in which they intended to maintain their separate law offices. After a site was purchased and bids from local contractors were submitted, it became apparent to the parties that the cost of constructing the building as planned exceeded the funds available. In an effort to reduce those costs, Roach offered to, and did, act as the general contractor for the project.
Prior to the completion of the building, a special shareholder meeting was held on September 24, 1975, during which Frank K. Bynum, another practicing attorney, was elected to serve as Legal's third director. The directors then issued Bynum 500 shares of Legal stock and elected him to the position of Secretary. The issuance of stock to Bynum brought the total number of issued and outstanding Legal shares to 1500, with each of the stockholders owning one-third. Bynum contributed $14,000.00 toward the building fund and executed a shareholder agreement similar to that signed by Roach and Forstman except this agreement, signed by all three men, bound them to (1) vote for each other as directors; (2) vote for Roach as President/Treasurer, Forstman as Vice President, and Bynum as Secretary; (3) required the other shareholders or directors to either rescind their vote or cause the corporation to purchase the dissenting shareholder's stock in the event action was taken or authorized by a vote of less than seventy percent of the shareholders or directors; and (4) provide one-third of the cost associated with the construction and maintenance of the building.
Soon after the building was completed and the three moved their law practices into the building, disagreements arose over their respective financial obligations to the corporation. Approximately one month after Forstman removed his law practice from the building, all three attended a shareholder meeting where, in keeping with the shareholder agreement, each was reelected to the position of director. Forstman, however, refused to vote for Roach as President/Treasurer. During this meeting, Roach informed Bynum and Forstman that the par value of Legal's stock could not be increased as Bynum requested because of an outstanding $40,100.00 note Roach signed on behalf of the corporation to himself for the services he rendered as general contractor for the building. The meeting adjourned, thus leaving Roach as the holdover President/Treasurer.
In April of 1976, Roach, with Forstman's consent, leased to another attorney the office space Forstman had previously occupied. The rental charged on this lease was greater than that paid by Forstman during his occupancy.
At the annual meeting in March, 1977, Roach utilized the seventy percent vote requirement to successfully block several of Forstman's and Bynum's motions[1] by casting his vote against the proposals. Forstman's nomination of Bynum and himself as Legal's only directors as well as his nomination *191 of Bynum as President/Treasurer and himself Vice President/Secretary also failed to receive Roach's assenting vote. Once again, the meeting adjourned with Roach remaining as the holdover President.
On May 17, 1977, Bynum and Forstman sued for dissolution under Code 1975, § 10-2-204.[2] Roach counterclaimed for specific performance of the shareholder agreement, a determination of Forstman and Bynum's indebtedness to the corporation and, in the alternative, crossclaimed for a determination of the corporation's indebtedness to him on the note. The trial judge, sitting without a jury, found the corporation hopelessly deadlocked, determined that Roach's claim on the note was not well founded, ordered the corporation dissolved and appointed a receiver to liquidate Legal's assets. The judge also ordered the rental paid by the attorney who leased Forstman's office applied to Forstman's "contributory obligations to the corporate entity."

I
Roach contends the trial judge's findings that the corporation was hopelessly deadlocked within the meaning of Code 1975, § 10-2-204 is unsupported by the evidence. Although not for those reasons advanced by Roach, we agree that Legal is not deadlocked.
All allegations of deadlock arise from the seventy percent quorum and vote requirement imposed by Articles IV, VI and XII of the bylaws. Assuming these bylaws are valid, they in effect require the presence of all the shareholders in order to constitute a quorum at shareholder meetings and, more importantly, that all shareholder action must be by unanimous consent. The same is required for director action at meetings of Legal's directors.
As a general rule, bylaws of a corporation are valid if they are reasonable, proper objects of the corporation, and are consistent with the charter and statutory law governing the corporation. See 18 Am. Jur.2d, Corporations § 165 (1965); 18 C.J.S. Corporations § 189(1) (1940). The Alabama Business Corporation Act follows this rule by authorizing corporations to make and alter "all needful bylaws" "unless inconsistent with the nature, character or object of the corporation or unless such powers are expressly denied to the corporation by its charter." Code 1975, § 10-2-160(6)[3]. Roach, at the time he was the sole shareholder and director of Legal, attempted to exercise this grant of authority by passing, inter alia. Article IV of the bylaws which imposed seventy percent quorum and vote requirements for shareholder action; Article V, § 3, and IX, § 6, which vested in the President the power and authority to manage the corporation; and Article XII which imposed a seventy percent quorum and vote requirement for shareholder action to alter, amend, repeal or adopt bylaws.
Roach contends that Legal is not deadlocked because he continues to manage the affairs of the corporation under the power and authority vested in him as President by Articles V, § 3, and IX, § 6, of the bylaws. We disagree. According to the Alabama Business Corporation Act, "[e]xcept as may otherwise be provided in the certificate of incorporation, the business and affairs of a corporation shall be managed by a board of directors." Code 1975, § 10-2-50[4]. Legal's Articles of Incorporation, *192 Article Eighth, § 4, provides that the business affairs of the corporation shall be under the management and control of Legal's directors. Those bylaws which vest the authority to manage Legal's affairs in the President conflict with both the Corporation Act and Legal's Articles of Incorporation and are therefore void. However, in the light of the dissension among the directors, "control" in the sense of continuing management by the directors is made illusory by the seventy percent quorum and vote requirement for director action imposed by Article VI, § 6, of the bylaws. Although these circumstances appear to indicate a director deadlock, we think that the power to break this and any other deadlock is held by Legal's shareholders.
At common law, the presence of a simple majority of shareholders entitled to vote on a matter constituted a quorum, and a majority vote of that quorum was all that was necessary to validly transact shareholder business. Benintendi v. Kenton Hotel, 294 N.Y. 112, 119, 60 N.E.2d 829, 831 (1945). Many states have modified this rule by enacting statutes which permit greater than majority quorum/vote requirements for shareholders and direction action. See e. g., Fla.Stat.Ann. §§ 607.094, .121 (West); Ga.Code Ann. §§ 22-607(a), 707(a); Ill.Rev.Stat. Ch. 32, § 157.31; N.J.Stat.Ann. § 14A:5-9; N.Y.Bus.Corp.Law §§ 616(a)(2), 709(a)(2); Tenn.Code Ann. § 48-711.
The requirement of unanimity or high quorum/vote for shareholder and director action is one of the most effective methods of protecting the interests of the minority shareholders and preventing the majority from "squeezing out" the minority. F. O'Neal, Oppression of Minority Shareholders, § 8.08 (1975). In addition to giving the minority what is in effect a veto power over corporate decisions, unanimity or high vote requirements permit the shareholders in a close corporation to be "shareholders to the outside world but partners among themselves." 1 F. O'Neal, Close Corporations, § 5.02, at 5-3 (2d ed. 1971).
The statutory language in many state corporations acts permits high vote requirements to be set out in either the certificate of incorporation or the bylaws. See, e. g., Fla.Stat.Ann. §§ 607.094(2), .121 (West) (shareholder and director action); Ga.Code Ann. §§ 22-607(b), 707(b) (shareholder and director action; Tenn.Code Ann. § 48-808(4) (director action only). Other statutory language indicates that such requirements as to shareholder action are valid only if included in the charter or articles of incorporation. See, e. g., N.Y.Bus.Corp.Law § 616(a)(2) (McKinney); Tenn. Code Ann. § 48-711. On this point it has been noted:
In some states, the part of the corporation act which lists items for inclusion in the charter is couched in language that lends some support to an argument that matters authorized for coverage in optional charter clauses cannot be covered by a bylaw provision or in a shareholder agreement. Thus, the Maryland statute provides that the articles of incorporation "shall state... (7) The restrictions, if any, imposed upon the transferability of shares of any class." Statutory language of this kind could conceivably be interpreted to mean that share restrictions elsewhere would be ineffective.
1 F. O'Neal, Close Corporations, § 3.79, at 3-114 (2d ed. 1971) (footnote and citation omitted). Several decisions supporting this interpretation have established the general rule that when the corporation's statute commands that a provision which governs shareholder rights be set out in the certificate of incorporation, but the provision is not so set out, a bylaw which purports to regulate the same subject is void. Model, Roland & Co. v. Industrial Acoustics Co., 16 N.Y.2d 703, 261 N.Y.S.2d 896, 209 N.E.2d 553 (1965); In re William Faehndrich, Inc., 2 N.Y.2d 468, 161 N.Y.S.2d 99, 141 N.E.2d 597 (1957); Benintendi v. Kenton Hotel, 294 N.Y. 112, 60 N.E.2d 829 (1945). See also, Paulek v. Isgar, 38 Colo.App. 29, 551 P.2d 213 (1976); State v. Anderson, 31 Ind.App. 34, 67 N.E. 207 (1903); Steiner & Lobman v. Land & Lumber Co., 120 Ala. 128, 26 So. 494 (1897).
*193 The provisions of the Alabama Business Corporation Act in effect both at the time when Legal was formed and when this action was commenced provided[5]:
§ 10-2-23. Certificate of incorporation Signatures; contents.
The certificate of incorporation ... shall set forth:
* * * * * *
(11) VOTINGThe certificate of incorporation may contain provisions requiring for any corporate act the vote of a larger proportion of the stock or any class thereof than is required by this chapter.
We think this language is susceptible of the same interpretation other courts have given similarly worded statutes. A provision mandating a greater than majority shareholder vote is valid only if set forth in the certificate of incorporation, and a bylaw which purports to impose the same requirement is void.
Legal's certificate of incorporation is silent as to the number of votes necessary to transact shareholder business. The record is devoid of any evidence of an amendment to the certificate which addressed this issue. We therefore conclude that, at the time of its "passage," the bylaw which mandated shareholder vote of seventy percent was void and, unless the Corporation Act imposes a different requirement, a simple majority vote of the quorum present at a shareholder meeting was all that was necessary to validly transact shareholder business. This conclusion equally applies to those bylaws which require a seventy percent shareholder vote to alter, amend or repeal existing bylaws or to adopt new bylaws. We hasten to point out that our decision here is under the old Corporation Act and in no case should be construed as an interpretation of any of the provisions of the new Corporation Act. While the new Act applies to some extent to all existing corporations, Code 1975, § 10-2A-334, it cannot operate to breathe life into a bylaw which, at the time of its passage, was void. Code 1975, § 10-2A-339.
Our resolution of these issues compels us to conclude that the corporation is not deadlocked. Any one of the shareholders may call a special shareholders meeting during which they may, by a simple majority of the quorum, exercise their right under Article Eighth of the Articles of Incorporation to vote to alter, amend or repeal any existing bylaw they find oppressive or burdensome[6]. In sum, the shareholders themselves hold the power to break any deadlock which may have arisen from Legal's existing bylaws. Therefore, the trial judge's order dissolving the corporation and appointing a receiver to liquidate Legal's assets is due to be reversed.

II
Roach argues that he is entitled to recover on his counterclaim on the $40,100.00 note, and that the trial judge erred when he denied this claim. In support of his position, Roach refers to the rule and exception stated in Navco Hardwood Co. v. Bass, 214 Ala. 553, 108 So. 452 (1925):
The general rule is that corporate offices (as president and directors, trustees for stockholders) are usually filled by the chief promoters of the corporation, whose interest in the stock or in other incidental advantages is supposed to be a motive for the execution of the duties of his office without compensation, and that this presumption *194 prevails until overcome by an express prearrangement of salary. Kilpatrick v. Penrose Ferry Bridge Co., 49 Pa. 118, 88 Am.Dec. 497; 14 A. C.J. p. 136, § 1906. This is a statement of the rule as to the compensation of corporate offices generally (representing the stockholders), but this general rule has no application to an officer who is the acting superintendent or general manager of the corporation's business, and who devotes practically his entire time to the business affairs of the corporation. 7 R. C. L. §§ 445, 446. The rule to be "deduced from the modern and best-considered cases seems to be that a person, although a director or other officer of a corporation, may recover the reasonable value of necessary services rendered to a corporation, entirely outside of the line and scope of his duties as such director or officer, performed at the instance of its officers, whose powers are of a general character, upon an implied promise to pay for such services, when they were rendered under such circumstances as to raise a fair presumption that the parties intended and understood they were to be paid for, or ought to have so intended and understood. * * * And it has been held that the general manager of a corporation, who is also a director, has a legal claim for the value of his services, although there has been no resolution of the board of directors or any express contract fixing his compensation, where he devotes his entire time to the business, and his duties are numerous and onerous and not such as pertain to his office as director." Bassett v. Fairchild, 132 Cal. 637, 64 P. 1082, 52 L.R.A. 611; 7 R. C. L. 464, 465. This follows from that other well-established rule, that the implied powers of a general executive officer of a corporation, as its general manager, are coextensive with the general scope of the business of the corporation.
Roach maintains that his claim falls within this exception to the general rule. We disagree. A "fair presumption that the parties intended and understood [the services] were to be paid for, or ought to have so intended and understood" does not arise in this case. First of all, neither Forstman nor Bynum requested Roach to act as general contractor. Second, and more importantly, the facts are clear that the costs of constructing the building as planned exceeded the funds available and that Roach acted as general contractor in order to cut those costs. These facts do not indicate that the parties intended to pay for Roach's services. If Roach did not intend to immediately recover for these services, but instead intended to be compensated only in the event the corporation was dissolved, he should have secured an express agreement to that effect. Otherwise, a presumption of compensation will not obtain in this circumstance.

III
Also by way of a counterclaim, Roach sought specific enforcement of clause 5(a)(1) of the shareholder agreement. That clause provides:
The undersigned individual parties hereto agree that each party, individually, shall provide Thirty Three and One Third (331/3%) per cent of the funds, in the legal tender of the United States, necessary to meet all mortgage payments, tax payments, maintenance costs, insurance, and any and all expenses necessary and incidental to the construction, ownership, operation and maintenance of an office building to be constructed on property presently held by LEGAL located in Homewood, Jefferson County, Alabama. Should either of the individual parties hereto fail or refuse to pay his Thirty Three and One Third (331/3%) of any of the before stated costs or expenses within Ninety (90) days of written notice that said costs or expenses are due or payable then the individual party thereto who fails or refuses to make said payments or provide funds for said purposes shall immediately cause LEGAL to purchase the shares owned by said individual party hereto at a price hereinafter provided in sub-paragraph 5.(d) hereof, as revised from time to time as therein provided. * * *
*195 Roach contends that neither Bynum nor Forstman met his financial obligations under this clause and that the trial judge erred when he failed to grant Roach's requested relief of specific performance, i. e., compelling them to sell their stock to Legal. We disagree.
Even though Forstman and Bynum may not have met all of their financial obligations under the shareholder agreementa fact which we need not determinewe think that there is ample evidence from which one could conclude that Roach has also failed to meet his financial obligations. At trial Roach introduced as exhibits balance sheets which showed the balance due from each shareholder. The balance sheet for both Forstman and Bynum indicate a balance due. Roach's balance sheet, however, indicates a credit. Although it appears from these exhibits that Roach correctly asserts that he has met his obligations and that Bynum and Forstman have not, a closer inspection of Roach's balance sheet shows that his account has been credited with interest due from the corporation on the $40,100.00 note. Roach himself admitted at trial that but for the credit of this interest he would be indebted to Legal. Given that the $40,100.00 note to Roach is invalid, and the trial court has determined that it is invalid, it follows that Roach is not entitled to have interest on that note credited to his account. Therefore, Roach is indebted to Legal and, under such circumstances ought not to be permitted to seek against Forstman and Bynum specific performance of a contractual provision which they could equally enforce against him.

IV
Finally, Roach contends the trial judge erred by ordering the rental paid by the attorney who leased Forstman's office applied to Forstman's "contributory obligations to the corporate entity." Without elaborating upon our reasoning, we find no error in the trial judge's disposition of this issue.
For the foregoing reasons the judgment on the claim for specific performance, and on the note and rental payment credit is due to be affirmed, and the order dissolving the corporation and appointing a receiver to liquidate Legal's assets is due to be reversed.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
MADDOX, JONES, ALMON, SHORES and ADAMS, JJ., concur.
TORBERT, C. J., and BEATTY, J., concur specially.
FAULKNER and EMBRY, JJ., recuse themselves.
TORBERT, Chief Justice (concurring specially).
I agree that the by-laws requiring the vote of 70% of the issued and outstanding stock to take corporate action is void under Alabama law. That is not to say that the same result would follow if such a requirement was provided in an otherwise valid agreement among all of the stockholders. The stockholders' agreement here does not provide for such a high vote requirement. Paragraph 5(a) of the stockholders' agreement only provides for certain alternatives "if any action be taken or authorized at a meeting ... by a vote of less than seventy (70%) percent," namely, rescission of the action or the purchase by the corporation of the stock owned by the dissenter.
At the meetings in question, no corporate action was taken by a vote of less than 70%. Additionally, Roach in his counterclaim sought to specifically enforce Paragraph 5(a)(1) of the stockholders' agreement pertaining to the financial obligations of each stockholder.
The validity or enforceability of the provisions of Paragraph 5(a) of the stockholders' agreement is not an issue before this Court.
BEATTY, J., concurs.
NOTES
[1] These included proposals (1) that court reporter or someone capable of taking shorthand be allowed to transcribe the business conducted at the meetings; (2) that the bylaws be changed; and (3) that a restriction be placed upon the President/Treasurer's authority to borrow and lend money on behalf of the corporation.
[2] Repealed by Acts 1980, No. 80-633, § 192, effective January 1, 1981, and replaced by Code 1975, § 10-2A-195.

In addition to the claim of deadlock, the plaintiffs alleged oppressive conduct on Roach's part. The trial judge did not expressly find oppressive conduct. Therefore, due to our finding that the corporation is not deadlocked, we need not address the allegations of oppressive conduct.
[3] Repealed by Acts 1980, No. 80-633, § 192, effective January 1, 1981. The statute which replaces § 10-2-160(6) authorizes corporations "[t]o make and alter bylaws, not inconsistent with the laws of this state, for the administration and regulation of the affairs of the corporation." Code 1975, § 10-2A-20(12).
[4] Repealed by Acts 1980, No. 80-633, § 192, effective January 1, 1981, and replaced by Code 1975, § 10-2A-57, which contains a similar provision.
[5] At the time Legal was incorporated, the provisions of Tit. 10, § 21(1), et seq., were in effect. Code 1975, § 10-2-1, et seq., which replaced those applicable provisions of Tit. 10, § 21, was repealed by Acts 1980, No. 80-633, § 192, effective January 1, 1981. The provisions for greater than majority quorum/vote requirements are presently embodied in Code 1975, §§ 10-2A-52 and 10-2A-54.
[6] Although the power to alter bylaws is typically vested in the board of directors, such power may be reserved to the shareholders if so provided in the certificate of incorporation. Code 1975, § 10-2-161, repealed by Acts 1980, No. 80-633, § 192, effective January 1, 1981, and replaced by Code 1975, § 10-2A-45. Article Eighth of Legal's Articles of Incorporation reserves to the shareholders the power to make, alter, amend and repeal bylaws.