In the Matter of the Voluntary Dissolution of RADOM & NEI-DORFF, INC. DAVID RADOM, Appellant; ANNA NEIDORFF, Respondent.

Argued January 22, 1954; decided April 22, 1954.

*Stanley N. Ohlbaum* for appellant.   I. It was error to dismiss the petition without a hearing.   (*Cohen* v. *Dana,* 287 N. Y. 405; *Locke* v. *Pembroke,* 280 N. Y. 430; *Schafran & Finkel* v. *Loewenstein & Sons,* 280 N. Y. 164, 280 N. Y. 687; *MacMurray* v. *City of Long Beach,* 292 N. Y. 286; *Kane* v. *Walsh,* 295 N. Y. 198; *Dun & Bradstreet* v. *City of New York,* 276 N. Y. 198; *Wainwright & Page* v. *Burr & McAuley,* 272 N. Y. 130; *Condon* v. *Associated Hosp. Service,* 287 N. Y. 411; *Green* v. *Doniger,* 300 N. Y. 238; *Birnbaum* v. *Jamestown Mut. Ins. Co.,* 298 N. Y. 305.)   II. Petitioner showed prima facie grounds for relief under section 103 of the General Corporation Law.   (*Winter* v. *American Aniline Products,* 236 N. Y. 199; *Peabody, Jr., & Co.* v. *Travelers' Ins. Co.,* 206 App. Div. 206; *Staten Is. Edison Corp.* v. *Maltbie,* 296 N. Y. 374; *People ex rel. Northchester Corp.* v. *Miller,* 288 N. Y. 163.)   III. The Appellate Division lacked power to make a final determination in favor of respondent dismissing the petition, in the absence of any hearing or findings of fact by the lower court.   (*Skinner* v. *Paramount Pictures,* 294 N. Y. 474; *Kroll* v. *Zimmerman,* 274 App. Div. 1070; *Marwede* v. *Commercial Hotel,* 273 App. Div. 984; *Cobb* v. *Mutual Life Ins. Co. of N. Y.,* 275 App. Div. 626; *Klepper* v. *Canadian Pacific Ry. Co.,* 193 Misc. 808; *Matter of Chapman,* 162 N. Y. 456; *Cuff* v. *Dorland,* 57 N. Y. 560.)   IV. The Appellate Division erred in entertaining the appeal from a mere order of reference to hear and report which meanwhile held the petition in abeyance pending the coming in of the Referee's report.   (*Matter of Silaski,* 175 App. Div. 199; *Luttenberger* v. *Alpert Woodworking Corp.,* 252 App. Div. 862; *Magalhaes* v. *Magalhaes,* 254 App. Div. 880; *Michel Cosmetics* v. *Tsirkas,* 262 App. Div. 858; *Manufacturers Trust Co.* v. *Madgo Realty Corp.,* 256 App. Div. 954;

*Carretta* v. *Evans,* 254 App. Div. 773; *Warshow* v. *Herron,* 254 App. Div. 699; *People ex rel. Keator* v. *Moss,* 6 App. Div. 414; *Stock* v. *Mann,* 233 App. Div. 18; *Matter of Wellman* v. *Lipkind,* 226 App. Div. 106.) V. In any event, if clarification of the petition was deemed essential, it should not have been summarily dismissed with costs and disbursements without granting petitioner an opportunity to amend. VI. The order of reference of the Special Term was in every way proper under article 9 of the General Corporation Law. (*Benintendi* v. *Kenton Hotel,* 294 N. Y. 112; *Matter of Gotham Tissue Corp.* [*Picola*], 269 App. Div. 922; *Matter of McLoughlin,* 176 App. Div. 653; *Matter of Numode Realty Co.,* 278 App. Div. 979; *Matter of Hassam Paving Co.,* 152 App. Div. 610; *Matter of Rateau Sales Co.,* 201 N. Y. 420; *Matter of Cantelmo* [*Brewer*], 275 App. Div. 231.) VII. Pendency of an equity suit is not a bar to dissolution. VIII. Corporate solvency and an engorged cash bank account are no bar to dissolution under section 103. IX. The incidental temporary stay at the end of the Special Term order was not an improper exercise of discretion under the circumstances; and in any event did not affect the propriety of the order of reference to hear and report under section 113 of the General Corporation Law. (*Metropolitan Trust Co.* v. *Stallo,* 166 App. Div. 639; *Levy* v. *Pacific Eastern Corp.,* 154 Misc. 655; *De La Vergne Mach. Co.* v. *New York & Brooklyn Brewing Co.,* 125 App. Div. 649; *Matter of Seneca Oil Co.,* 153 App. Div. 594, 208 N. Y. 545; *Pollak* v. *Long Is. Lighting Co.,* 246 App. Div. 765.)

*Charles H. Tuttle, Milton M. Eisenberg* and *Robert P. Knapp, Jr.,* for respondent. I. Radom's appeal from those portions of the order of the Appellate Division which deny his motions for reargument and for leave to amend his petition should be dismissed. Those portions of the record which reproduce the papers submitted by Radom in support of those motions should be disregarded on this appeal. II. In no real or legal sense is the appellant aggrieved by the determination below. III. The order appealed from is discretionary. Hence the appeal should be dismissed. (*Pietraroia* v. *New Jersey & H. R. Ry. & F. Co.,* 197 N. Y. 434; *Ellensohn* v. *Keyes,* 6 App. Div. 601; *Howell* v. *Mills,* 53 N. Y. 322; *Wallace & Sons* v. *Castle,* 68 N. Y. 370;

*Syracuse Sav. Bank* v. *Syracuse C. & N. Y. R. R. Co.,* 88 N. Y. 110; *Jenkins* v. *Baker,* 91 App. Div. 400; *Decauville Automobile Co.* v. *Metropolitan Bank,* 124 App. Div. 478; *Uttal* v. *Uttal,* 140 App. Div. 255; *Muldoon* v. *Day,* 146 App. Div. 873; *Matter of Curtiss,* 199 N. Y. 36.) IV. Upon the record before it the Appellate Division was furnished with more than sufficient facts to cause it to exercise its discretion in ordering the petition for voluntary dissolution dismissed. Moreover, the undisputed facts established that no case for dissolution existed under the applicable statute; that the dissolution would not have been "beneficial to the stockholders", and that the order of the Supreme Court at Special Term exceeded the bounds of any discretionary power that may be claimed to exist in law. (*Matter of Binghamton Gen. Elec. Co.,* 143 N. Y. 261; *Matter of Dolgeville Elec. Light & Power Co.,* 160 N. Y. 500; *Matter of Hamilton Park Co.,* 1 App. Div. 375; *Matter of Tarrytown, White Plains & M. Ry. Co.,* 133 App. Div. 297; *Matter of Cantelmo* [*Brewer*], 275 App. Div. 231; *Matter of Myer* v. *Myer,* 272 App. Div. 888, 297 N. Y. 1038; *Matter of George W. Anderson, Inc.,* 279 App. Div. 594; *Matter of Pyrolusite Manganese Co.,* 29 Hun 429; *Matter of Ehret,* 70 Misc. 576.) V. Radom was not entitled in law to use this dissolution proceeding as the means of staying and killing the Kings County action theretofore brought against him by Mrs. Neidorff in the right of the corporation. VI. The Appellate Division's reversal of the stay is not appealable as of right to this court. VII. Inasmuch as the assignment of Mr. Justice DICKSTEIN to Special Term, Part I, had expired without a hearing herein, over three years before issue was joined in this special proceeding by the filing of Mrs. Neidorff's answering affidavit, his jurisdiction to have the proceeding and make the decision had also long since expired, irrespective of the interpretation of the parties' stipulation. Nor could such jurisdiction be conferred by consent. (*People* v. *Sullivan,* 115 N. Y. 185; *Matter of Jacobs* v. *Steinbrink,* 242 App. Div. 197.)

DESMOND, J. Radom & Neidorff, Inc., the proposed dissolution of which is before us here, is a domestic corporation which has, for many years, conducted, with great success, the business of lithographing or printing musical compositions. For some thirty years prior to February 18, 1950, Henry Neidorff,

now deceased, husband of respondent Anna Neidorff, and David Radom, brother-in-law of Neidorff and brother of Mrs. Neidorff, were the sole stockholders, each holding eighty shares. Henry Neidorff's will made his wife his executrix and bequeathed her the stock, so that, ever since his death, petitioner-appellant David Radom and Anna Neidorff, brother and sister, have been the sole and equal stockholders. Although brother and sister, they were unfriendly before Neidorff's death and their estrangement continues. On July 17, 1950, five months after Neidorff's death, Radom brought this proceeding, praying that the corporation be dissolved under section 103 of the General Corporation Law, the applicable part of which is as follows:

"§ 103. *Petition in case of deadlock.*

"Unless otherwise provided in the certificate of incorporation, if a corporation has an even number of directors who are equally divided respecting the management of its affairs, or if the votes of its stockholders are so divided that they cannot elect a board of directors, the holders of one-half of the stock entitled to vote at an election of directors may present a verified petition for dissolution of the corporation as prescribed in this article."

That statute, like others in article 9 of the General Corporation Law, describes the situations in which dissolution may be petitioned for, but, as we shall show later, it does not mandate the granting of the relief in every such case.

The petition here stated to the court that the corporation is solvent and its operations successful, but that, since Henry Neidorff's death, his widow (respondent here) has refused to co-operate with petitioner as president, and that she refuses to sign his salary checks, leaving him without salary, although he has the sole burden of running the business. It was alleged, too, that, because of "unresolved disagreements" between petitioner and respondent, election of any directors, at a stockholders' meeting held for that purpose in June, 1950, had proved impossible. A schedule attached to the petition showed corporate assets consisting of machinery and supplies worth about $9,500, cash about $82,000, and no indebtedness except about $17,000 owed to petitioner (plus his salary claim). Mrs. Neidorff's answering papers alleged that, while her husband

was alive, the two owners had each drawn about $25,000 per year from the corporation, that, shortly after her husband's death, petitioner had asked her to allow him alone to sign all checks, which request she refused, that he had then offered her $75,000 for her stock, and, on her rejection thereof, had threatened to have the corporation dissolved and to buy it in at a low price or, if she should be the purchaser, that he would start a competing business. She further alleged that she has not, since her husband's death, interfered with Radom's conduct of the business and has signed all corporate checks sent her by him except checks for his own salary which, she says, she declined to sign because of a stockholder's derivative suit brought by her against Radom, and still pending, charging him with enriching himself at this corporation's expense.

Because of other litigation now concluded (see *Matter of Radom,* 305 N. Y. 679) to which Mrs. Neidorff was not a party, but which had to do with a contest as to the ownership of the Radom stock, respondent's answering papers in this dissolution proceeding were not filed until three years after the petition was entered. From the answering papers it appears, without dispute, that for those three years, the corporation's profits before taxes had totaled about $242,000, or an annual average of about $71,000, on a gross annual business of about $250,000, and that the corporation had, in 1953, about $300,000 on deposit in banks. There are many other accusations and counteraccusations in these wordy papers, but the only material facts are undisputed: first, that these two equal stockholders dislike and distrust each other; second, that, despite the feuding and backbiting, there is no stalemate or impasse as to corporate policies; third, that the corporation is not sick but flourishing; fourth, that dissolution is not necessary for the corporation or for either stockholder; and, fifth, that petitioner, though he is in an uncomfortable and disagreeable situation for which he may or may not be at fault, has no grievance cognizable by a court except as to the nonpayment of his salary, hardly a ground for dissolving the corporation.

Special Term held that these papers showed a basic and irreconcilable conflict between the two stockholders requiring dissolution, for the protection of both of them, if the petition's

allegations should be proven. An order for a reference was, accordingly, made, but respondent appealed therefrom, and no hearings were held by the Referee. The Appellate Division reversed the order and dismissed the petition, pointing out, among other things, that not only have the corporation's activities not been paralyzed but that its profits have increased and its assets trebled during the pendency of this proceeding, that the failure of petitioner to receive his salary did not frustrate the corporate business and was remediable by means other than dissolution. The dismissal of the proceeding was " without prejudice, however, to the bringing of another proceeding should deadlock in fact arise in the selection of a board of directors, at a meeting of stockholders to be duly called or if other deadlock should occur threatening impairment or in fact impairing the economic operations of the corporation." (282 App. Div. 854.) Petitioner then appealed to this court.

It is worthy of passing mention, at least, that respondent has, in her papers, formally offered, and repeated the offer on the argument of the appeal before us, " to have the third director named by the American Arbitration Association, any Bar Association or any recognized and respected public body ".

Clearly, the dismissal of this petition was within the discretion of the Appellate Division (General Corporation Law, § 106; *Matter of Cantelmo* [*Brewer*], 275 App. Div. 231; *Matter of Myer* v. *Myer,* 272 App. Div. 888, motion for leave to appeal denied 297 N. Y. 1038). There is no absolute right to dissolution under such circumstances. Even when majority stockholders file a petition because of internal corporate conflicts, the order is granted only when the competing interests " are so discordant as to prevent efficient management " and the " object of its corporate existence cannot be attained " (*Hitch* v. *Hawley,* 132 N. Y. 212, 221; see *Matter of Niagara Ins. Co.,* 1 Paige Ch. 258). The prime inquiry is, always, as to necessity for dissolution, that is, whether judicially-imposed death " will be beneficial to the stockholders or members and not injurious to the public " (General Corporation Law, § 117; *Hitch* v. *Hawley, supra;* 1944 Report of N. Y. Law Revision Commission, p. 354, also cases from other jurisdictions cited in that report in the footnotes to p. 363; *Matter of Pyrolusite*

*Manganese Co.,* 29 Hun 429; *Matter of George W. Anderson, Inc.,* 104 N. Y. S. 2d 184, affd. 279 App. Div. 594). Taking everything in the petition as true, this was not such a case, and so there was no need for a reference, or for the taking of proof, under sections 106 and 113 of the General Corporation Law.

The order should be affirmed, with costs.

FULD, J. (dissenting). Section 103 of the General Corporation Law, insofar as here relevant, permits a petition for dissolution of a corporation by the holders of one half of the shares of stock entitled to vote for directors " if the votes of its stockholders are so divided that they cannot elect a board of directors ". That is the precise situation in the case before us, for the petition explicitly recites that petitioner Radom and respondent Neidorff " are hopelessly deadlocked with respect to the management and operation of the corporation " and that serious disputes have developed between them with the result that " the votes of the two stockholders are so divided that they cannot elect a Board of Directors."

The court is given discretion, by section 106 of the General Corporation Law, to " entertain or dismiss the application " for dissolution. And, the statute continues, " Where it entertains the application * * * the court *must* make an order, requiring all persons interested in the corporation to show cause before it, or before a referee designated in the order * * * why the corporation should not be dissolved." (Italics supplied.) In this case, the court (per GREENBERG, J.) did, in its discretion, "entertain " the application, and it did, on July 18, 1950, make the specified order requiring all parties interested to show cause why the corporation should not be dissolved. No motion was then made to dismiss the petition for insufficiency in law or for any other reason, and neither at that time nor at any other did respondent object to the order to show cause or seek to set it aside on the ground that the facts alleged were legally insufficient. The petition having been filed (§ 103) and the application having been entertained (§ 106), the legislature prescribed in section 113 that the court or the referee " *must* hear the allegations and proofs of the parties, and determine the facts." (Emphasis supplied.) And on June 15, 1953 — following stipulated adjournments —

another justice at Special Term (DICKSTEIN, J.), in accordance with the statutory mandate of section 113, appointed a referee to hear and report.

That reference was obligatory and should have gone forward. True, once a hearing has been had, the petition may, in the discretion of the court, be dismissed. (See *Matter of Cantelmo* [*Brewer*], 275 App. Div. 231; *Matter of Myer* v. *Myer*, 272 App. Div. 888, motion for leave to appeal denied 297 N. Y. 1038.) But, if the jurisdictional requirements of section 103 are satisfied and a show cause order under section 106 has issued, then, the legislature has made it clear, the court is powerless to order a dismissal until the facts have been heard and the issues decided. (General Corporation Law, § 113; see *Matter of Quicksilver Min. Co.*, 186 App. Div. 347, 349; *Matter of Acker & Jablow, Inc.*, 124 N. Y. S. 2d 298, affd. 282 App. Div. 941.) And no case, in the Court of Appeals or in any Appellate Division, has held otherwise. (See, for example, cases cited by court, *supra*, p. 7; *Matter of Cantelmo* [*Brewer*], *supra*, 275 App. Div. 231; *Matter of Myer* v. *Myer*, *supra*, 272 App. Div. 888, motion for leave to appeal denied 297 N. Y. 1038, where hearings were held.) For that reason, the order under review should be reversed.

I would not, however, rest decision on that ground alone. Even if the Appellate Division possessed the power to dismiss the petition without a hearing, its decision in this case constitutes a gross abuse of discretion. Whether petitioner will be able to sustain his claims, I do not know, but it seems exceeding plain that he has alleged more than enough to entitle him to a hearing and to an opportunity to present his proofs. (See, e.g., *Matter of Acker & Jablow, Inc.*, *supra*, 124 N. Y. S. 2d 298, affd. 282 App. Div. 941; *Matter of Numode Realty Co.*, 278 App. Div. 979; *Matter of Lynch*, 54 N. Y. S. 2d 111.)

For upwards of thirty years, petitioner Radom and Henry Neidorff, respondent's husband, shared equally in the ownership and management of Radom & Neidorff, Inc. Through all that time, their relationship was harmonious as well as profitable. Neidorff died in 1950, at which time respondent, through inheritance, acquired her present 50% stock interest in the

business. Since then, all has been discord and conflict. The parties, brother and sister, are at complete loggerheads; they have been unable to elect a board of directors; dividends have neither been declared nor distributed, although the corporation has earned profits; debts of the corporation have gone unpaid, although the corporation is solvent; petitioner, who since Neidorff's death has been the sole manager of the business, has not received a penny of his salary — amounting to $25,000 a year — because respondent has refused to sign any corporate check to his order. More, petitioner's business judgment and integrity, never before questioned, have been directly attacked in the stockholder's derivative suit, instituted by respondent, charging that he has falsified the corporation's records, converted its assets and otherwise enriched himself at its expense. Negotiations looking to the purchase by one stockholder of the other's interest were begun — in an effort to end the impasse — but they, too, have failed.

In very truth, as petitioner states in his papers, " a corporation of this type, with only two stockholders in it, cannot continue to operate with incessant litigation and feuding between the two stockholders, and with differences as fundamental and wholly irreconcilable as are those of Mrs. Neidorff and myself. * * * settlement of these differences cannot be effected, while continuance on the present basis is impossible, so that there is no alternative to judicial dissolution." Indeed, petitioner avers, in view of the unceasing discord and the fact that he has had to work without salary and advance his own money to the corporation, he does not, whether or no dissolution be granted, " propose to continue to labor in and operate this business ".

It is, then, undisputed and indisputable that the stockholders are not able to elect a board of directors. In addition, it is manifest, on the facts alleged, that the Supreme Court could find that the stockholders are hopelessly deadlocked vis-à-vis the management of the corporation; that the corporation cannot long continue to function effectively or profitably under such conditions; that petitioner's resignation as president and manager — which he contemplates — will be highly detrimental to the interests of both corporation and stockholders and can-

not help but result in substantial loss; and that petitioner is not responsible for the deadlock that exists. In such circumstances, the requisite statutory hearing may well establish that dissolution is indispensable, the only remedy available. As the high court of New Jersey recently declared, in applying to somewhat comparable facts a statute similar to section 103 of our General Corporation Law (*Matter of Collins-Doan Co.,* 3 N. J. 382, 396), "In the case at hand, *there is a want of that community of interest essential to corporate operation.* Dissolution will serve the interests of the shareholders as well as public policy. * * * And, if the statutory authority be deemed discretionary in essence, there is no ground for withholding its affirmative exercise here, *for there is no alternative corrective remedy.* * * * The dissension is such as to defeat the end for which the corporation was organized." (Emphasis supplied.)

Here, too, the asserted dissension, the court could find, permits of no real or effective remedy but a section 103 dissolution. And that is confirmed by a consideration of the alternatives seemingly open to petitioner. He could remain as president and manager of the corporation, without compensation, completely at odds with his embittered sister — certainly neither a natural nor a satisfying way in which to conduct a business. Or he could carry out his present plan to quit the enterprise — and thereby risk a loss, to corporation and stockholders, far greater than that involved in terminating the business. Or he could, without quitting, set up a competing enterprise — and thereby expose himself to suit for breach of fiduciary duty to the corporation. (Cf. *Duane Jones Co.* v. *Burke,* 306 N. Y. 172.) It is difficult to believe that the legislature could have intended to put one in petitioner's position to such a choice. Reason plainly indicates, and the law allows, the reasonable course of orderly dissolution pursuant to section 103.

Respondent, however, suggests that, in view of the fact that petitioner is managing the business profitably, he should continue to do so, defend against the stockholder's suit which she brought attacking his honor and integrity and himself start an action for the compensation denied him for more than three

years. But, it seems self-evident, more and further litigation would only aggravate, not cure, the underlying deadlock of which petitioner complains. (See *Saltz* v. *Saltz Bros.*, 84 F. 2d 246, certiorari denied 299 U. S. 567.) And, if he were to bring the suggested suit for salary due him, the question arises, whom should he sue, and who is to defend?[1] The mere proposal that petitioner embark on a series of actions against the corporation, of which he is president and half owner, indicates the extent of the present impasse, as well as the futility of perpetuating it. The same is true of the other alternative suggested by respondent, namely, that the third of the three directors, required by section 5 of the Stock Corporation Law, be appointed by an impartial party. The deadlock of which petitioner complains is between the stockholders, not the directors, and, when stockholders are deadlocked, section 103 calls for dissolution, not arbitration. Beyond that, and even if the offer to elect an impartial director were relevant, it would still be necessary to inquire when it was made and under what circumstances. It does not justify, alone or in conjunction with the other facts, a summary dismissal of the proceeding without a hearing.

Although respondent relies on the fact that the corporation is now solvent and operating at a profit, it is manifest that, if petitioner carries out his plan to resign as president and quits the business, there may be irreparable loss, not alone to him and respondent, as the owners of the corporation, but also to the corporation's creditors. Quite apart from that, however, the sole issue under section 103 is whether there is a deadlock as to the management of the corporation, not whether business is being conducted at a profit or loss. (See *Benintendi* v. *Kenton Hotel*, 294 N. Y. 112, 118; *Matter of Acker & Jablow, Inc., supra*, 124 N. Y. S. 2d 298, affd. 282 App. Div. 941; *Matter of Gotham Tissue Corp.*, 269 App. Div. 922; *Matter of Bob's Fashion Furrier's*, 52 N. Y. S. 2d 279; *Saltz* v. *Saltz Bros., supra*, 84 F. 2d 246, certiorari denied 299 U. S. 567; *Bowen* v. *Bowen-Romer Flour Mills Corp.*, 114 Kan. 95;

1. In this connection, it is, perhaps, of some moment that, according to petitioner, he is the sole officer and director of the corporation (cf. Civ. Prac. Act, § 228).

*Matter of Collins-Doan Co., supra,* 3 N. J. 382; *Post-Standard Co.* v. *Evening Journal Assn.,* 15 N. J. Super. 58, 67; *Nashville Packet Co.* v. *Neville,* 144 Tenn. 698; *Boothe* v. *Summit Coal Min. Co.,* 55 Wash. 167; *Matter of Yenidje Tobacco Co., Ltd.,* [1916] 2 Ch. 426; see, also, Israels, " The Sacred Cow of Corporate Existence Problems of Deadlock and Dissolution ", 19 U. of Chi. L. Rev. 778; Note, 50 Col. L. Rev. 100.) Whether the petition should or should not be entertained surely cannot be made to turn on proof that the corporation is on the verge of ruin or insolvency.

Insolvency may be a predicate for dissolution, but not under section 103. By virtue of other provisions of Article 9 of the General Corporation Law — sections 101 and 102 — directors and stockholders may seek dissolution, when the corporation is insolvent, in order to prevent further loss to the owners and creditors. Section 103, however — which bears the title, " *Petition in case of deadlock* " — was designed to serve a far different purpose. As amended in 1944, upon the recommendation of the Law Revision Commission, that section provides for dissolution " if the votes of its stockholders are so divided that they cannot elect a board of directors ". Nothing in the statute itself or in its legislative history suggests that a " petition in case of deadlock " must wait until the corporation's profits have dried up and financial reverses set in. Had the commission or the legislature intended to incorporate such a qualification into section 103, it could readily have done so. The only test envisaged by the commission, however, was that which the legislature enacted (see 1944 Report of N. Y. Law Revision Commission, N. Y. Legis. Doc., 1944, No. 65[K], pp. 5–7), and a court may not import any other.

Nor does section 117 require or suggest any contrary conclusion. That section provides that if — *after a hearing* (§ 116) — it shall appear " that a dissolution will be beneficial to the stockholders * * * and not injurious to the public, the court must make a final order dissolving the corporation ". It would certainly be " beneficial " to dissolve the corporation if the court were to find that there is a continuing, irreparable stalemate in the corporate management, for which petitioner is not primarily at fault. Indeed, in *Benintendi* v.

*Kenton Hotel* (*supra,* 294 N. Y. 112, 118), this court did not even impose those limitations, when it declared that "The Legislature has decided that a vote of a majority of the shares, or half of them in case of a deadlock, is sufficient to *force a dissolution.*" (Emphasis supplied.) Be that as it may, though, the issue here is, not the propriety of dissolution, but petitioner's right to be heard on that question. (See, e.g., *Matter of Acker & Jablow, Inc., supra,* 124 N. Y. S. 2d 298, affd. 282 App. Div. 941; *Matter of Gotham Tissue Corp., supra,* 269 App. Div. 922.) In advance of that hearing and in the light of the plain language of section 103, we may not say that dissolution could, under no conceivable set of circumstances, be "beneficial to the stockholders", unless it also appears that it would enable the corporation to avoid pecuniary loss.

Until there has been a hearing, it is impossible to decide that "dissolution is not necessary" or that "there is no stalemate or impasse as to corporate policies" (opinion, p. 6). In point of fact, petitioner expressly denies both of these allegations; and, despite respondent's protestations, it is significant that she has not pointed to even one matter on which she and petitioner have agreed. Nor may we take at face value respondent's claim that she is willing to defer to petitioner's business judgment in the future. It is, to say the least, highly implausible that she is willing and even anxious to have her affairs managed by a person whom she has charged with deliberate fraud, conversion and mismanagement. As the court said in *Matter of Yenidje Tobacco Co., Ltd.* (*supra,* [1916] 2 Ch. 426, 431) — which also involved the dissolution of a deadlocked two-man corporation — "When one of the two partners has commenced, and has not discontinued, an action charging his co-partner with fraud * * * is it likely, is it reasonable, is it common sense, to suppose those two partners can work together in the manner in which they ought to work in the conduct of the * * * business?" And, even if it is "likely" that these two persons, petitioner and respondent, can work together, the issue should not, and may not, be resolved before it has even been heard.

The court's decision seems to compel petitioner to abandon the management of the enterprise as a condition to his seeking

dissolution. I find no basis in the statute or elsewhere for requiring that irreparable injury must occur before resort may be had to the remedy designed to avert it.

The order of the Appellate Division should be reversed and that at Special Term affirmed.

CONWAY, DYE and VAN VOORHIS, JJ., concur with DESMOND, J.; FULD, J., dissents in opinion in which LEWIS, Ch. J., and FROESSEL, J., concur.

Order affirmed. [See 307 N. Y. 701.]

