JULIÁN VÁZQUEZ OLMEDO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, J. M. CALDERÓN, JR., JUDGE, Respondent; and SAN MIGUEL Y CÍA, Intervener.

No. 2076. Argued May 2, 1955.—Decided October 11, 1955.

708

*Héctor Ramos Mimoso* for petitioner. *Francisco Ponsa Feliú* for intervener, plaintiff in the main action.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

San Miguel & Cía., Inc., and Julián Vázquez Olmedo executed a contract whereby they agreed to organize a cor-

poration in which each of them would own $100,000 worth of stock and of which Vázquez would be General Manager. San Miguel & Cía., Inc., sued Vázquez for performance of the contract and damages. We granted certiorari to review the order of the Superior Court denying the defendant's motion to strike the paragraph of the prayer asking for performance of the contract.

■■ The complaint is so short that we quote it in full:

"1. The plaintiff and the defendant executed a contract which is attached to this complaint and is made part thereof, marked 'Exhibit A'.

"2. The defendant has wilfully refused and refuses to comply with his duties and obligations as required by the contract in spite of the demands made to that effect by the plaintiff, which is ready and willing to comply with all those required of it in accordance with said contract.

"3. The failure of the defendant to carry out the terms of the contract is causing and has to date caused the plaintiff damages in the amount of $20,000.

"4. The plaintiff PRAYS for judgment:

"(a) requiring the defendant to perform each and everyone of his obligations in accordance with the contract;

"(b) requiring the defendant to pay the plaintiff damages in the amount of $20,000;

"(c) requiring the defendant to pay the costs, expenses interest, and attorney's fees of the plaintiff; and

"(d) any other relief provided by law."

The contract, which is made part of the complaint, provides that the parties have agreed to organize a domestic corporation to engage in commerce in electrical, fluid gas, and refrigeration products, with the principal office in San Juan. The contract contains the following clauses and conditions:

"*First:* The name of the corporation shall be North Electric and Refrigeration Corporation.

"*Second:* The authorized capital of the corporation shall be One Million Dollars ($1,000,000), divided into ten thousand

(10,000) shares of common stock at a par value of One Hundred Dollars ($100) each.

"*Third:* the paid-in capital shall be Two Hundred Thousand Dollars ($200,000), of which the party Mr. Vázquez Olmedo shall subscribe One Hundred Thousand Dollars ($100,000) and the party San Miguel & Compañía, Inc., the remaining One Hundred Thousand Dollars ($100,000).

"*Fourth:* The party Mr. Vázquez Olmedo shall pay for his stock in obligations signed by him and his wife, Mrs. María Plard de Vázquez Olmedo. The said obligations shall be guaranteed by collateral consisting of all the title, right, interest, and participation of the spouses Vázquez Olmedo in the contract of April 10, 1953 between Julián Vázquez Olmedo and Luis R. González, covering the purchase of the rights and stock of Mr. Vázquez Olmedo in North Electric Company, Inc. The obligations which Mr. Vázquez Olmedo and his wife are to execute in payment for the stock of the corporation shall bear ordinary interest at six per cent (6%) annually which shall be charged in an account to be credited with the profits of the corporation.

"*Fifth:* The incorporators of the new entity shall be
José A. Martínez Román
Julián Vázquez Olmedo
María Plard de Vázquez Olmedo, and
Jorge Ruiz Rivera,

with a subscribed capital of Three Hundred Dollars ($300) each.

"*Sixth:* The Board of Directors of North Electric and Refrigeration Corporation shall consist of the following persons:

President...............Marcelino San Miguel
Vice-President ...........Julián Vázquez Olmedo
Secretary................María Plard de Vázquez Olmedo
Treasurer: ..............José M. Martínez Román
Alternates...............Ana María Pérez
Guillermo Machargo del Río
Arturo A. Plard
Augusto J. Plard

"*Seventh:* The party, Mr. Julián Vázquez Olmedo, shall be Vice-President and General Manager of the corporation at an annual salary of Nine Thousand Dollars ($9,000), paid in monthly installments."

The Eighth clause recites that the corporation shall engage in the above-described business as well as other commercial activities. The Ninth clause provides a specific location for its place of business, and the Tenth clause recites that the rent therefor shall be $550 a month. The remaining clauses of the contract provide in detail for the valuation and method of transfer to the proposed corporation (1) of the inventory of stock and equipment which now belong to the Department of Refrigeration of the plaintiff and (2) of the obligations of the new corporation to render service to previous purchasers of equipment from the said Refrigeration Department.

By his motion to strike a portion of the prayer—par. 4(a)—the defendant sought a ruling that the plaintiff is not entitled to the remedy of performance of the contract, as distinguished from damages.[1] Rule 12(f) of the Rules of Civil Procedure provides that only ". . . redundant, immaterial, impertinent, or scandalous matter . . ." may be stricken from a pleading. Motions to strike are not favored. Matter will not be stricken ". . . unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." 2 Moore's Federal Practice, 2d ed., par.12.21, pp. 2317–8, citing cases; *id.*, 1955 Cum.Supp., pp. 175 *et seq.; Tartak* v. *District Court and Cruz, Int.*, 74 P.R.R. 805, 811; *Alicea* v. *Sucn. J. Serrallés*, 71 P.R.R. 452, 453.

We therefore turn to the question of whether the allegations of the complaint, including the prayer, could by any possible contingency entitle the plaintiff to performance

---

[1] We put to one side the contention of the plaintiff that the motion to strike a portion of the prayer should have been denied without further ado, in view of the fact that the prayer is not generally considered as part of the complaint. We assume we would make an exception in this case in view of the brief and general allegations of the body of the complaint. *Cf. People* v. *Henneman*, 60 P.R.R. 58, 66.

of the contract. Under the civil law—contrary to the common law—the fact that a plaintiff who alleges a breach of contract has an adequate remedy by way of damages does not bar him from seeking performance of the contract. The plaintiff ". . . may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages . . .". Section 1077, Civil Code, 1930 ed., 31 L.P.R.A. § 3052; § 1340 of the Civil Code, 31 L.P.R.A. § 3747; Szladits, *The Concept of Specific Performance in Civil Law*, IV Am.J.Comp.L. 208; Jackson, *Specific Performance of Contracts in Louisiana*, 24 Tulane L.Rev. 400.[2] But although the adequacy of the remedy of damages plays no role under our law, §§ 1077 and 1340 of the Civil Code do not create an automatic and absolute right to performance of a contract in all cases. For example, this remedy does not lie where the contract is impossible to perform or with rare exceptions where personal services are required. See Szladits, *supra; Nuñez v. Soto Nussa, District Judge,* 14 P.R.R. 190; Annotation, 135 A.L.R. 279; 5 Williston *on Contracts,* Rev.Ed., § 1422, p. 3973; *id.,* § 1423A, p. 3983. In the same way, in view of the special nature of a corporation and of some of the provisions of our Corporation Law—Act No. 30, Laws of Puerto Rico, 1911, as amended, 14 L.P.R.A. §§ 52 *et seq.*—there may be factors and circumstances involved in a particular contract to organize a corporation which would prevent our courts from ordering performance of the contract.

Section 6 of our Corporation Act—14 L.P.R.A. § 81— provides for three or more incorporators. The defendant and three other persons are named in the contract as in-

---

[2] For cases arising under §§ 1077 and 1340, see *Caballero v. Kogan,* 73 P.R.R. 617; *Collazo v. Conesa,* 70 P.R.R. 144; *De la Haba v. Gay & Co.,* 52 P.R.R. 568; *Ayende et al. v. Crespo,* 38 P.R.R. 127; *Cruz v. Martínez,* 29 P.R.R. 61. *Cf. Javierre v. Central Altagracia,* 217 U.S. 502, reversing *Central Altagracia v. Javierre & Gil,* III P.R.Fed. Reports 256, which was apparently decided without taking into consideration the provisions of our Civil Code.

·corporators. Since the three other persons did not sign the contract, they are not obliged to act as incorporators. The defendant therefore argues that it is impossible for the trial court to compel performance of the contract in view of the possibility that two of these three other persons might refuse to serve as incorporators.

The plaintiff might perhaps argue that the identity of the incorporators is a somewhat formal matter and that new incorporators may be readily secured to replace those who refuse to serve. But incorporators—in addition to sub-.scribing to stock of the proposed corporation—perform important functions in connection with the organization of a corporation. See paragraph 7 of § 7 of the Corporation Act, 14 L.P.R.A. § 82, par. 7. There is therefore considerable force in the contention of the defendant that the failure to obtain three incorporators from the list of four found in the contract would defeat the right of the plaintiff to performance of the contract. However, the case is not ripe for the determination of this question. The willingness of three incorporators to serve is a matter for proof by way of affidavits on a motion for summary judgment or of testimony at the trial, and not for speculation in passing on .a motion to strike. For the same reason we can not speculate, as the defendant asks us to do, that it might not be possible to obtain acceptance from three of the persons listed in the Sixth clause of the contract to serve as directors as required by § 9 of the Corporation Act, 14 L.P.R.A. § 85. All these matters may be raised by the defendant at a later .stage of the case. We cannot pass on them on a motion to .strike.[3]

---

[3] The defendant cannot be compelled to serve as a director or as Vice-President and General Manager. *Nuñez* v. *Soto Nusa, District Judge,* .supra. *Quaere*, whether this plus other factors would prevent a judgment .for performance of the contract since it is impossible to order performance ·of all the terms of the contract. *Cf. Roller* v. *Weigle,* 261 F. 250 (C.A. D.C., 1919); *Deitz* v. *Stephenson,* 95 P. 803 (Ore., 1908); Annotation, 22 A.L.R.2d 508, 540–1; 5 Williston, *supra,* § 1430, p. 4002, *et seq.* See .also *Municipality* v. *Vidal,* 65 P.R.R. 346.

714

The President of a corporation must be selected from among the directors, who must be bona fide stockholders. Section 11 of the Corporation Act, 14 L.P.R.A. § 87. The contract provides that Marcelino San Miguel shall be a director and President, but no provision is made for him to be a stockholder. The defendant therefore argues that this will prevent performance of the contract. Here again we cannot assume in considering a motion to strike that the plaintiff will not be able to show that San Miguel is in a position to obtain a qualifying share from the plaintiff corporation. Once more consideration of this matter must be postponed until definite information is before the court on it.

The defendant, citing *Encarnación* v. *Salim*, 69 P.R.R. 715, raises the question of whether the contract may be enforced in view of the fact that it purports to bind the defendant's wife, who did not sign the contract, (1) to execute together with the defendant the "obligations" which constitute payment for the defendant's stock, and (2) to serve as an incorporator and director. The defendant filed an affidavit by the wife to the effect that she would not execute the "obligations" or serve as an incorporator or director. We cannot take this affidavit into consideration. Although Moore calls this a ". . . technical position [which] is regrettable . . .", we agree with the cases that ordinarily matter outside the pleadings will not be considered in support of *a motion to strike*. 2 Moore, *supra*, p. 2320; *id.*, 1955 Supp., 178; *In the Matter of Miller*, 6 Fed. Rules Serv. 12 F.26, Case 1 (N.D., Ohio, 1942); *Thrailkill* v. *Calloway*, 9 Fed. Rules Serv. 12f.26, Case 2 (E.D. Tenn., 1946). The contention on this point is a serious and substantial question which the trial court will be required to consider at the proper time.[4]

The defendant places great reliance on an Annotation

---

[4] On all these questions of compelling person not parties to the contract to serve as incorporators and directors—and in the case of the wife, to execute "obligations"—*cf.* 5 Williston, *supra*, § 1422, pp. 3973–4.

in 158 A.L.R. 997. This Annotation quotes at p. 999 from Ehrich, Promoters, p. 57, § 38 that "it might, perhaps, be categorically stated that an agreement to form a corporation will not be specifically enforced."

The Annotation then states at pp. 999–1000: "As a general proposition, this statement is borne out by the cases. In nearly all the cases within the scope of the present annotation specific performance has been denied for one or more of the following reasons: that the terms of the contract were not sufficiently certain and definite . . . ; that a court of equity will not render a decree which requires protracted supervision . . . ; that a court of equity has no power to control by its decree of specific performance the discretion of administrative officers from whom under state law a permit for the issuance of stock has to be procured . . . ; that the complaint calls for the performance of acts which require the participation of others not parties to the contract or suit . . . ; that the court has no power to compel a nonexistent corporation to issue and distribute stock in a specified manner . . . ; that the court has no power to compel a corporation to elect specified persons as officers thereof . . . ; that it might be impossible for the defendant to find the requisite number of incorporators . . . ; that at the time of the suit, the parties were hostile and unfriendly . . . ; that three of the four proposed incorporators were insolvent . . . ; that the plaintiff's promise to render services to the projected corporation was not susceptible of specific performance." The Annotation cites and discusses the cases sustaining these propositions. The trial court will be required to determine which, if any, of the foregoing propositions applies here after the facts have been developed.[5]

It would be futile, as pointed out in the said Annotation, to order the organization of a corporation which would have

---

[5] Some of the difficulties involved in a suit for performance of a contract to organize a corporation are described in Dodd and Baker, *Cases on Business Associations, Corporations*, Vol. I, p. 808, and *Hyer* v.

to be dissolved almost immediately because of irreconcilable dissension and division among the stockholders. *Cf.* Annotation, 13 A.L.R.2d 1260; O'Neal, *Resolving Disputes in Closely Held Corporations: Intra-Institutional Arbitration*, 67 Harv.L.Rev.786,787, footnote 3; 29 N.Y.U. L.Rev. 1485, and 68 Harv.L.Rev. 714, commenting on *In re Radom & Neidorf, Inc.*, 119 N.E.2d 563 (N.Y., 1954); 29 Tulane L.Rev. 147, commenting on *Kay* v. *Key West Development Co.*, 72 S.2d 786 (Fla., 1954); Comment, 43 Calif.L.Rev. 514 (July, 1955). But whether such dissension and division exists cannot be determined on the motion to strike which is before us.

There are other provisions in the contract not discussed by either party in their briefs on which the trial court will have to pass. For example, § 18 of Act No. 30, 14 L.P.R.A. § 121, provides in part: "Except as provided in this section, nothing but money shall be considered as payment of any part of the capital stock of any corporation organized under this Act." Does the provision in the Fourth clause of the contract for payment by the defendant for his shares in "obligations" signed by him and his wife violate § 18? *Cf.* Annotations, 58 A.L.R. 708; 37 A.L.R.2d 913; 11 Fletcher, *Cyclopedia Corporations, Perm. ed.*, § 5194, pp. 444 *et seq.* See *Julio Godreau Co.* v. *The Registrar*, 23 P.R.R. 61. If so, may such a contention be raised by the defendant, or is it available only to the plaintiff or the future corporation? *Cf.* 11 Fletcher, *supra*, § 5196 *et seq.* Is the question as to who may raise this point affected by the fact that no corporation had as yet been formed when the complaint was filed?

The contract as we have seen provides that the stockholders shall elect certain persons as directors; that the

---

*Richmond Traction Company*, 168 U.S. 471, 483. For discussion of the question of specific performance of contracts to sell or buy stock, see 51 Mich.L.Rev. 408; 81 C.J.S. pp. 577-9; Annotation, 130 A.L.R. 920; 5 Williston, *supra*, 3957.

defendant shall be Vice-President and General Manager of the future corporation at a salary of $9,000 per year; and that a certain building shall be rented at a stipulated rent by the corporation. At least two questions arise by virtue of these provisions of the contract. The first is whether prospective stockholders of a nonexistent corporation may validly bind themselves to vote in this manner in the future. The second question is whether such provisions encroach illegally on the statutory powers vested in the directors by § 11 of the Corporation Act, 14 L.P.R.A. § 87,[6] particularly if the prospective stockholders are not unanimously in favor thereof and a corporation which has not yet been organized is involved. *Cf.* Note, *Shareholder Participation in Corporate Management*, 40 Va.L.Rev.901; Hornstein, *Stockholders' Agreement in the Closely Held Corporation*, 59 Yale L.J.1040, 1042–4;[7] Delaney, *The Corporate Director: Can His Hands be Tied in Advance*, 50 Col.L.Rev. 52; Note, *The Legality of Stockholders' Unanimous Agreements for the Management of Corporate Property*, 43 Ill.L.Rev. 561; 61 Harv.L.Rev.1251, commenting on *Long Park v. Trenton-New Brunswick Theatres Co.*, 77 N.E.2d 633 (N.Y.,1948); *Tremsky v. Green*, 106 N.Y.S.2d 572, 574–5 (N.Y., 1951); *Hyer v. Richmond Traction Company*, supra, 481; 60 Hav.L.Rev. 651, commenting on *Ringling v. Ringling Bros.–Barnum & Bailey*

---

[6] Section 11 of Act No. 30, as amended by Act No. 24, Laws of Puerto Rico, 1916, reads in part as follows: "The business of every corporation shall be managed by its directors, each of whom must be, at the time of his election, a bona fide stockholder thereof . . .".

[7] Hornstein, a noted authority on corporation law, states at pp.1042–3 of 59 Yale L.J. that an agreement by *all* the stockholders to vote for some of themselves as directors who will then appoint designated persons to particular offices at stated salaries is probably valid. But here some of the stockholders are not parties to the contract, *cf.* footnotes 3 and 4. Also, Hornstein points out at p. 1044: "Even though stockholders may validly agree to elect themselves directors and to appoint specified persons as officers, they still may not completely by-pass the board of directors by written agreement which pre-empts virtually all directoral powers." We leave these substantial questions, not yet raised by the defendant, for the trial court to determine in the first instance.

*Comb. Shows,* 49 A.2d 603 (Del., 1946). See *Succrs. of Abarca, S. en C.* v. *Central Vannina, Inc.,* 41 P.R.R. 336, 344.

The plaintiff will have to satisfy the trial court as to all the foregoing questions—and others which may have escaped our attention—before it will be entitled to performance of the contract. Some of the serious and substantial problems in this case may well persuade the trial court to refuse the remedy of performance of the contract. But as we have seen a motion to strike allegations from a complaint will not lie if any possibility exists that such allegations may have some bearing on the litigation. We cannot say on the record before us—a complaint and a motion to strike —that there is no possible contingency on which the plaintiff would be entitled to performance of the contract. The trial court therefore did not err in denying the motion to strike.[8]

The writ of certiorari will be discharged.

Mr. Justice Belaval dissented.

ORDER

San Juan, Puerto Rico, December 9, 1955

The foregoing motion for reconsideration is denied.

It was so decreed by the Court as witness the signature of the Chief Justice. Mr. Justice Belaval dissented.

A. C. SNYDER,
Chief Justice

I Certify:
IGNACIO RIVERA,
Secretary

MR. JUSTICE BELAVAL, dissenting.

I have always believed that, in this case, there is no right of action for the specific performance of the contract

---

[8] The defendant expresses concern in his brief about the fact that the plaintiff has attached a $100,000 credit belonging to the defendant. The quickest way to determine whether this attachment should be dissolved is for the defendant to file an appropriate motion or answer under which all or some of the numerous questions raised by this case can be settled.

·signed by the parties. This being so, my opinion is that the petitioner has the right to request that everything dealing with the specific performance of the obligation be eliminated from the prayer of the answer. The fact that the description of the cause of action appears clearer in the prayer than in the recital of the complaint, should not alter this result, since that is merely a question of style.

The function of a motion to strike is to dispose beforehand of whatever may be superfluous, unnecessary or useless in the issue in controversy. The elimination of such matters simplifies the issue and avoids the introduction of evidence on aspects of the issue which, as a question of law, contribute nothing to the solution of the legal problem.

For this reason, I regret having to dissent once more in this motion for reconsideration of our judgment of October 11, 1955, from which, and for this same reason, I dissented.