LEO CALLIER, Plaintiff-Appellee, *v.* SCOTT CALLIER *et al.*, Defendants-Appellants.

Fifth District   No. 76-164

Opinion filed July 13, 1978.—Rehearing denied August 1, 1978.

C. Glennon Rau and James M. Martin, both of Rau & Martin, of Waterloo, for appellants.

Gene M. Zafft, Merle L. Silverstein, and Steven J. Stogel, all of Rosenblum, Goldenhersh, Silverstein & Zafft, of Clayton, Missouri, and David J. Letvin, of Cohn, Carr, Korein, Kunin & Brennan, of East St. Louis, for appellee.

Mr. JUSTICE WINELAND delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of St. Clair County ordering liquidation of the assets and business of All Steel Pipe and Tube, Inc., an Illinois corporation, pursuant to section 86(a)(1) of the

Business Corporation Act of 1933, as amended (Ill. Rev. Stat. 1975, ch. 32, par. 157.86(a)(1)).

The complaint alleged that the directors of the corporation were deadlocked in the management of corporate affairs, that the shareholders were unable to break the deadlock, and that irreparable injury to the corporation was being suffered or threatened because of the deadlock, and prayed that the court liquidate the assets and business of the corporation. The answer admitted that there were differences of opinion between the two equal shareholders, but denied that there was a deadlock of directors or that irreparable injury had been suffered or threatened. The answer affirmatively alleged that the plaintiff was not entitled to relief because he had unilaterally terminated the operations of All Steel and established a "mirror image" corporation with many of All Steel's employees and customers. After a hearing, the court on January 12, 1976, entered its "Judgment and Decree," finding that all the material allegations of the complaint had been proved, and ordering the appointment of a liquidating receiver pursuant to section 87 of the Business Corporation Act (Ill. Rev. Stat. 1975, ch. 32, par. 157.87). Post-trial motions filed within 30 days of the judgment were denied on March 15, 1976. Defendants' notice of appeal was filed on April 14, 1976.

■■ We must first address plaintiff's contention that this court is without jurisdiction because the defendants' notice of appeal was not timely filed. Plaintiff argues that the January 12 order was an interlocutory one, and therefore, under Supreme Court Rule 307 (Ill. Rev. Stat. 1975, ch. 110A, par. 307), the appeal had to be perfected within 30 days of that order. We cannot agree, because we do not agree that the court's "Judgment and Decree" was an interlocutory order. The order in question decided all the material issues raised by the pleadings, and disposed of the entire controversy between the parties on the merits. (See, *e.g., Village of Niles v. Szczesny*, 13 Ill. 2d 45, 48, 147 N.E.2d 371, 372 (1958).) The mere fact that the court below retained jurisdiction to enter an order dissolving the corporation after liquidation and distribution of the corporation's assets does not make the order any less final. (*Impey v. City of Wheaton*, 60 Ill. App. 2d 99, 208 N.E.2d 419 (2d Dist. 1965).) Thus the notice of appeal filed within 30 days of the order denying the post-trial motions was timely, and the motion to dismiss this appeal is denied.

The facts necessary to an understanding of the merits of the appeal are as follows. All Steel Pipe and Tube is a close corporation formed in 1969 to engage in the business of selling steel pipes and tubes. The two equal shareholders, plaintiff-appellee Leo Callier and defendant-appellant Scott Callier, each made an initial investment of $500 in the corporation. Scott is Leo's uncle. Defendant-appellant Felix Callier, one of the two directors of the corporation, is Scott's father and Leo's grandfather. It is undisputed

that Felix, who is in his 80's, is the "nominee" of Scott on the board of directors, and that he has never taken an active role in the day-to-day management of the business. Leo is the other director, and is president of the corporation. Scott's title is general manager; he was appointed to that position by unanimous resolution of the board, and can only be removed by the board.

Increasingly over the years of their business association, Scott and Leo had differences of opinion about various aspects of the operation of the company. Despite the steady deterioration of the owners' relationship, the company flourished. From about $200,000 in 1970, gross sales had increased to $25,000,000 a year in 1974.

In early 1975, the series of events leading to this litigation took place. Scott was involved in preparing and sending to each employee of the corporation, and each employee's spouse, a letter warning that "social and/or emotional and/or physical relationships between male and female employees for other than business purposes" would thenceforth be grounds for immediate dismissal. This so called "fraternization letter" created a furor within the company, and resulted in Leo's informing Scott that he no longer wanted to be associated with him.

Negotiations looking towards the redemption of Scott's shares by Leo began immediately, but despite the diligent efforts of their attorneys the parties could not reach an agreement. In April 1975, the discussion turned to voluntary dissolution and liquidation of the corporation, but still no agreement could be reached.

On April 30, 1975, Leo sent a telegram to Scott purporting to fire him as general manager. On the next day, without any prior notice, Leo called all the employees together and announced that the business was being closed down immediately. During the next month, Leo began to wind down the business of All Steel. On May 5 he formed a new Delaware corporation, Callier Steel Pipe and Tube, Inc. On May 30, all operations at All Steel ceased. Callier Steel opened for business on June 2, employing about 40 of All Steel's previous employees. On June 11, Leo filed the complaint in the instant cause.

The issue on this appeal is whether the plaintiff sustained his burden of proof under section 86(a)(1) of the Business Corporation Act. The defendants contend that there was insufficient proof of either a deadlock or irreparable injury within the meaning of the Act to justify dissolution and liquidation of the corporation.

Corporations, which are creatures of statute, can only be dissolved according to statute. (*Central Standard Life Insurance Co. v. Davis*, 10 Ill. App. 2d 245, 134 N.E.2d 653 (3d Dist. 1956), *aff'd*, 10 Ill. 2d 566, 141 N.E.2d 45 (1957).) As our supreme court said in the *Davis* case, "Corporate dissolution is a drastic remedy, and the teachings of

generations of chancellors admonish us that it must not be lightly invoked." 10 Ill. 2d 566, 576, 141 N.E.2d 45, 51; see also *Gidwitz v. Lanzit Corrugated Box Co.*, 20 Ill. 2d 208, 170 N.E.2d 131 (1960); *Glickauf v. Moss*, 23 Ill. App. 3d 679, 320 N.E.2d 132 (1st Dist. 1974); 19 C.J.S. *Corporations* §§1647, 1648 (1940).

The statute at issue here is as follows:

> "Circuit courts have full power to liquidate the assets and business of a corporation:
>
> (a) In an action by a shareholder when it appears:
>
> (l) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is suffered or threatened by reason thereof * * *." Ill. Rev. Stat. 1975, ch. 32, par. 157—86(a)(1).

Section 86(a)(1) has not been a frequently used basis for dissolution, presumably because of the "substantial problems of interpretation" connected with its provisions. (C. Murdock, Illinois Business Corporation Act Annotated 481 (3d ed. 1975).) The terms *deadlock* and *irreparable injury* are both undefined and troublesome. It has been said that mere dissension among stockholders is not a ground for dissolution unless it is of such serious proportions as to defeat the end for which the corporation is organized. (See 19 C.J.S. *Corporations* §1672, at 1447-1448 (1940); see also *In Re Radom & Neidorff, Inc.*, 307 N.Y. 1, 119 N.E.2d 563 (1954); *RKO Theatres, Inc. v. Trenton-New Brunswick Theatres Co.*, 9 N.J. Super. 401, 409, 74 A.2d 914, 918 (1950) ("Succinctly stated, a deadlocked corporation is one which, because of decision or indecision of stockholders, cannot perform its corporate powers").[1] This formulation would seem consistent with the dictionary definition of the word *deadlock*:

> "A counteraction of things producing entire stoppage; hence, *a state of inaction* or of neutralization caused by the opposition of persons or factions, as in a government or in a voting body." (Emphasis added.) Webster's New International Dictionary, Unabridged 674 (2d ed. 1956).

■■ After a careful review of the entire record, we have concluded that plaintiff's proof was insufficient to show either deadlock in the

---

[1] We note parenthetically that on October 1, 1977, the new Close Corporation Act came into effect. (Ill. Rev. Stat. 1977, ch. 32, par. 1202 *et seq.*) Section 14(a) of that Act requires before involuntary dissolution proof of deadlock, failure of any remedy provided in a written agreement of the shareholders, and "such internal dissension among the shareholders of the corporation that the business and affairs can no longer be conducted in the best interests of the shareholders." (Ill. Rev. Stat. 1977, ch. 32, par. 1214(a).) The profitability of the corporation will no doubt remain a touchstone of what is in the best interest of the shareholders, as making a profit is presumably the end for which a corporation is organized.

management of corporate affairs or the threat of irreparable injury to the corporation. What the evidence shows, instead, is two equal shareholders who were unable to get along and unable to reach agreement within a four-month period as to the redemption of one's shares by the other or to the terms of voluntary dissolution. This is not equivalent to an inability of the corporation to perform the functions for which it was created. Without adopting the position of defendants that the threat of irreparable injury can never be shown under this statute so long as a corporation is making a profit, we must agree with defendants that such a threat was not proved here.

It appears to us that Leo Callier simply decided that he was not going to have anything more to do with Scott Callier, and when their redemption-liquidation negotiations stalled, he made a unilateral decision—without consulting the other director or shareholder—to shut down the corporation. On the day that he informed the employees of the closing of the corporation, corporate affairs were being managed, and quite successfully. In fact, the company appeared on its way to the second best year of its history, despite a general downturn in the pipe industry. Neither Scott nor Felix Callier was interfering with the management of the corporation; Scott had in fact intentionally stayed away from the company and allowed Leo to run things alone while the redemption discussions were going on.

Thus, absent sufficient proof of the jurisdictional facts of deadlock and irreparable injury, the court below erred in ordering liquidation of the corporate assets.

A further consideration impels us towards reversal of the trial court's decision. At the time that he was winding down the affairs of All Steel, Leo Callier was in the process of forming another company to carry on the same kind of business, with many of the same employees and the same customers. That company is now doing business; All Steel is not. Should we sanction what appears to be a flagrant breach of Leo's fiduciary duty as a director of All Steel, we would be permitting him to siphon off the going-concern value of All Steel, leaving the 50-percent shareholder who was opposed to dissolution with only half of whatever assets are in the control of the receiver. This, we think, would be manifestly unfair. See L. Miller, *The New Illinois Close Corporation Law: A Preliminary Analysis*, 66 Ill. Bar J. 378, 380-81 (1978).

We realize, of course, that merely by reversing the order of the court below we cannot revivify All Steel Pipe and Tube in this appeal. We cannot, however, sustain a judgment which is not founded on proof of the statutory requirements for dissolution and which permits one owner of a corporation to deprive one of who is an equal owner of his equal share of the corporate assets by means of self-help.

Appellants in their brief would have us take certain steps in order to revitalize the corporation. There is little doubt that a court of equity has power to achieve a just result in such cases. (*Baker v. Commercial Body Builders* (1973), 264 Ore. 614, 507 P.2d 387.) We remain content at this time however to reverse the judgment of the trial court, leaving it to the further pleadings of the parties, and to the trial court to determine what further action should be decreed to fashion a fair and equitable remedy for the redress of the wrong done to appellants. Trial courts are ordinarily much better equipped to deal with such matters than are courts of appeal.

For the foregoing reasons the judgment of the Circuit Court of St. Clair County is reversed, and this cause is remanded to that court for further proceeding consistent with this opinion.

Reversed and remanded.

G. J. MORAN and JONES, JJ., concur.