Heney J. Latham, J.
Defendants move for an order (1) dismissing each cause of action asserted on behalf of the plaintiff corporations on the ground that they lack legal capacity to sue; (2) striking out the appearances of the attorneys for those corporations, setting aside service of the summons and complaint and dismissing the complaint as to those corporations on the ground that the attorneys were not authorized to institute this action; (3) dismissing each cause of action asserted on behalf of the individual plaintiffs for legal insufficiency and (4), in the alternative, requiring plaintiffs separately to state and number their causes of action.
All of the plaintiffs and defendants Maurice Moreida and Sylvia Moreida were parties to a stockholders’ agreement dated May 1, 1953, which superseded four prior agreements. That agreement defined the rights, duties and obligations among plaintiffs Nu-Boro Park Cleaners, Inc., Hymax Realty Corp. (formerly known as ABJAC Realty Corp.), Nu-Boro Cold Pur Storage, Inc., Hyman Lasker and Max Jacobs and defendant Maurice Moreida. Since the parties concede that those corporations are really different aspects of a single wholesale and retail dry cleaning, laundering and garment storage business, they will hereinafter sometimes be referred to simply as Nu-Boro. The above-mentioned principal individuals will be referred to as Lasker, Jacobs and Moreida.
The complaint in this action, to which the 1953 agreement is annexed and made a part, contains three causes of action, the first of which is asserted on behalf of all the plaintiffs against *350 defendants Maurice and Sylvia Moreida and the second and third of which are asserted by all of the plaintiffs against all of the defendants.
The first cause of action sets forth some of the pertinent provisions of the 1953 agreement and the amended certificates of incorporation (provisions which will subsequently be referred to) and alleges in substance that Moreida breached the 1953 agreement by continuously failing since -September, 1960 to devote his attention exclusively to the business of Nu-Boro and by devoting a substantial part of his attention to the competing business of the defendant American Drive-In Cleaners of Hewlett, Inc. (hereinafter referred to as American), all or substantially all of the stock of which was purchased by the Moreidas at his instance and which -has been organized, managed, operated and controlled by him with the use of facilities, services, equipment, employees and property of Nu-Boro, causing Nu-Boro to sustain substantial business losses and Lasker and Jacobs substantial reductions in salaries and earnings. Moreida’s wife, Sylvia, is the president of American and his son, Bert, is its secretary and treasurer. All three are the directors of American and have been such since about September, 1960. Plaintiffs then allege that the veto power vested in Moreida under the 1953 agreement, if permitted to be exercised, would paralyze the business of Nu-Boro; that a determination of the rights of the plaintiffs is necessary and essential for the preservation of their interest in the business of Nu-Boro and in the .corporation itself; and that no means exist for determination of this dispute without the risk of material and irreparable damage, possible termination and destruction of the business of Nu-Boro and great and irreparable loss to the individual plaintiffs.
In the second cause of action, plaintiffs incorporate by reference all of the allegations contained in the first 37 paragraphs of the complaint and add allegations of a conspiracy among the defendants to cause Moreida to act in violation of the 1953 agreement in order to divert the business of Nu-Boro to themselves, with their consequent unjust enrichment.
In the third cause of action, plaintiffs again incorporate by reference all of .the allegations contained in the first 37 paragraphs and add, in substance, that the defendants are liable to account and pay to Nu-Boro all of the profits which they realized as a result of their conspiracy and that the business of American should be impressed with a trust in favor of Nu-Boro.
In their 12-paragraph prayer for relief (paragraph A of which is further subdivided into four additional paragraphs) plaintiffs seek, in substance, a declaratory judgment that Moreida has *351 breached the 1953 agreement; that he has violated his duties and obligations as officer and director of Nu-Boro and that said offices be declared to be vacant; that he has forfeited all rights under the 1953 agreement, including, among other things, his employment, salary, continuance as officer and director and power to sign checks and other instruments, and that the provisions of the 1953 agreement to that effect have terminated and become void. Further extensive equitable relief is soug’ht relating to the 1953 agreement, such as an accounting, the deletion of certain provisions from the certificates of incorporation, the impression of a trust and the' transfer of all shares of American to Nu-Boro.
The 1953 agreement recited that Lasker, Moreida and Jacobs each own one third of the shares of each of the corporations. Nu-Boro agreed, in paragraph 2, that it would continue to employ Lasker, Moreida and Jacobs to assist and be generally useful in all branches of its business ([a]); that the individuals would agree to devote their entire time and attention exclusively to the business of Nu-Boro and to use their utmost efforts to benefit it ([b]) and that each would be paid equal salaries ([d]). Lasker, Moreida and Jacobs agreed, in paragraph 3, that they would vote to retain and keep themselves in office as directors of the corporation ([a]); that they would vote to retain and keep Lasker as president, Moreida as vice-president and secretary and Jacobs as treasurer ([b]); that no contracts of employment were to be entered into except by their mutual consent ([c]), and that as directors they would adopt resolutions requiring the signatures of all three on all checks, negotiable instruments, bills of exchange, drafts and/or other evidences of indebtedness ([e]). The stock certificates were to have indorsed thereon an appropriate legend, unnecessary to specify, referring to and incorporating by reference the provisions of the agreement (15). And the agreement was not subject to oral modification or termination (17).
The certificates of incorporation, as amended in 1949, provide in pertinent part as follows:
“third: The purposes, powers or provisions to be added to the 'Certificate of Incorporation are as follows:
“ (a) The number of directors who shall be present at any meeting in order to constitute a quorum for the transaction of any business or of any specified item of business shall be three (3).
“(b) A unanimous vote of the directors shall be necessary for the transaction of any business or of any specified item of business at any meeting of directors,
*352 “ (c) The consent of the holders of all of the outstanding shares of the company shall be necessary for the transaction of any business or of any specified item of business, including amendments to the Certificate of Incorporation.”
The by-laws of Fur Storage, which were apparently drawn in 1946, gave the president of the corporations the following powers and authority:
“ 1 The President shall appoint and remove, employ and discharge and fix the compensation of all servants, agents, employees and clerks of the corporation ether than the duly elected officers, subject to the approval of the Board of Directors.
‘ ‘ ‘ He shall sign and make all contracts and agreements in the . name of the corporation and see that they are properly carried out. ’ ”
In his moving affidavit, Moreida refers to his status as equal stockholder, director and vice-president and secretary of the plaintiff corporations; the unanimity director and stockholder requirements of the respective certificates of incorporation; the provision of paragraph 3 of the 1953 agreement that no contracts of employment could be entered into by any of the plaintiff corporations except by the mutual consent of himself, Lasker and Jacobs; that Moreida has never approved or voted in favor of the commencement of this action by plaintiff corporations and that he has never consented to the employment of plaintiffs’ attorneys for the purpose of commencing this action on behalf of plaintiff corporations or for any other purpose.
In their opposing affidavit, Lasker and Jacobs set forth the provisions of the respective certificates of incorporation, as amended, and argue that only business transacted at meetings requires unanimous approval and that the ordinary activities of the corporation are carried on under the provisions of the corporate by-laws set forth above. While these by-laws, they state, are in the minute book of only one of the three corporations, to the best of their knowledge and belief the by-laws of all three corporations were the same. Under them, the president has authority, indeed has the duty and obligation in the first instance, to employ attorneys as servants or agents of the corporation and especially to do so in order to see that the corporate contract in suit is “ properly carried out.” True, what the president has done is subject to the approval of the board of directors, but it does not, .they contend, require prior approval. The provision of subdivision (c) of paragraph 3 of the 1953 agreement, i.e., 1‘ that no contracts of employment are to be entered into except by the mutual consent of the parties hereto ”, do not apply to oral hirings at will, but only to formal *353 contracts. This is evidenced by the fact that the plaintiff corporations have as a matter of practice hired servants, employees and clerks continuously during all the past years without prior or subsequent consultation or consent. Each officer employed people at will as he deemed necessary and proper for the conduct of his part of the business without consulting or obtaining the consent of the others. The plaintiff corporations have in the past retained three or four different firms of attorneys and never, except in one case, was the retainer on prior, mutual consent of all parties. Lasker and Jacobs conclude that the attack upon this action, based on Moreida’s alleged claim that he has not given his consent to .the action or the retention of plaintiffs’ attorneys, is without merit.
In his reply affidavit, Moreida stresses the fact that subdivision (c) of the amended certificates of incorporation expressly require the consent of all of the stockholders for the transaction of any business. He then states that the by-laws referred to in opposing affidavit are the by-laws of only one of the plaintiff corporations, Fur Storage; that the corporate by-laws of the other two corporations have been missing since 1939 and were prepared by an attorney other than the one who prepared the by-laws of Fur Storage and that he did not have the other by-laws available to him when he prepared the by-laws of Fur Storage. But even if all of the by-laws were the same, states this defendant, authorization of the president to appoint and remove, employ and discharge and fix the compensation of all servants, agents, etc., was subject to the approval of the board of directors, not subject to their disapproval. The distinction, he argues, is crucial, for if unanimous disapproval were required then the president, himself one of the stockholders and directors, could defeat the wishes of the others simply by approving the action that he had already taken. Moreida urges that the contract provision makes no distinction whatever between so-called at will agreements and formal contracts, but states flatly, clearly and all inclusively that “no contracts” could be entered into except by mutual consent. Indeed, the practice has been for the three parties to consult and to consent to the hiring of all employees whatever their status; so, too, with respect to the hiring of attorneys. He notes the absence of specification of even a single firm engaged without mutual consent and states that any such hiring would have been unauthorized. He, himself, gives a specific example as to a recent attempt by Lasker and Jacobs to engage a firm with respect to the modification of a contract, an attempt which was discontinued upon Moreida’s disapproval. The provision giving the president authority to *354 sign and make all contracts in the name of the corporation and see that they are properly carried out does not authorize and has never ¡been read as authorizing the president to institute legal action without consent of all the parties. Its purpose is simply to authorize him to oversee the day-to-day carrying out of contracts. If they are breached, the decision to engage attorneys and institute legal action has always been and is required to be by mutual consultation and consent. In the absence of such consent in the instant case, Moreida concludes, the maintenance of this action on behalf of plaintiff corporations is unauthorized.
The court is of the 'opinion that the president of the plaintiff corporations had the authority to institute this action in their names and, as a necessary incident thereto, to retain attorneys for that purpose.
In West View Hills v. Lizau Realty Corp. (6 N Y 2d 344) the Court of Appeals permitted the president of the plaintiff corporation to maintain an action in its name against two individuals, who comprised a majority of its hoard of directors who had not directly prohibited the maintenance of the action, and a corporation through which they allegedly sought to advance their own selfish interests which were contrary to the interests of the plaintiff corporation. This decision was reached (over a strong dissent by Judge Froessel in which Chief Judge Conway concurred) in the face of the statutory mandate that “ The business of a corporation shall be managed by its board of directors ” (General Corporation Law, § 27) and in the absence of any deadlock in the board.
The bases for the court’s decision were that a corporation is a separate, independent legal entity with separate, independent legal rights and that ‘ ‘ Absent a provision in the by-laws or action by the board of directors prohibiting the president from defending and instituting suit in the name of and in behalf of the corporation, he must be deemed, in the discharge of his duties, to have presumptive authority to so act ” (West View Hills v. Lizau Realty Corp., 6 N Y 2d 344, 348, supra).
That decision has, not unexpectedly, been the subject of considerable comment. Professor Miguel A. de Capriles of the New York University Law -School has said that it is an “ extreme * * * decision, which has attracted widespread and mostly
critical comment” (Annual Survey of American Law, 36 N.Y.U.L. Rev. 560, 567). On the other hand, Mr. Roger J. Goebel of the University of California Law School has said that the decision ‘ ‘ represents a major advance in corporate concepts and would appear to be the foundation stone for the building of futuro case law,” (The Authority of the President over Corpo *355 rate Litigation: A Study in Inherent Agency, 37 St. John’s L. Rev. 39, 77.)
Aside from the obvious fact that West View Hills is binding upon this court, its personal view of that decision is in accord with the sentiment expressed by Mr. Goebel. In a nutshell, that decision recognizes that, once created and until dissolution, a corporation, as a separate, legal entity, has the right of economic self-preservation, a right which may be asserted even against a majority of the directors entrusted and empowered with its management when their conduct allegedly constitutes a breach of that trust.
This court does not mean to suggest that such a situation in fact exists in this case. There ¡being, however, allegations in the complaint sufficient to charge that Moreida is seeking to protect the selfish interests of himself (and his family), which interests are in conflict with the interests of the plaintiff corporations— allegations which for purposes of this motion are accepted as true — the only pertinent inquiry remaining is whether Lasker, as president of all three corporations, has been prohibited from maintaining this action in their names.
As stated by a unanimous Court of Appeals (per Fuld, J.) in Rothman & Schneider v. Beckerman (2 N Y 2d 493, 497), a case involving a deadlock situation, “ Where there has been no direct prohibition by the board, .then, it has been held, the president has presumptive authority, in the discharge of his duties, to defend and prosecute suits in the name of the corporation.” (Emphasis supplied.) None of the documents before the court in the instant case, i.e., the amended certificates of incorporation, the 1953 agreement or the by-laws of Fur Storage, contains any direct or indirect prohibition upon the president, acting as such.
The amended certificates of incorporation require unanimous director and stockholder action; they say nothing of presidential action. If, where only majority director or stockholder action is required but not affirmatively taken, presidential action is not prohibited, which was the situation in West View Hills, no persuasive reason is apparent why presidential action should be prohibited where unanimous director action is required and not taken. Although Lasker is a director and stockholder of each of the plaintiff corporations, he does not sue in either of such capacities, but as president, an office which carries with it certain powers, presumptive or inherent. (See Goebel, loc. cit. supra, especially p. 69.)
Defendants attempt to distinguish West View Hills on the ground that the court found implied authority in the president *356 “ in the absence of provisions indicating that the parties intended to require unanimous agreement among the stockholders before the corporation could make a claim against any of them. As the Court of Appeals pointed out, the stockholders in West View did not adopt unanimity provisions, arrange for even voting power among the different groups so as to create a deadlock situation, or otherwise ensure that each stockholder could control corporate action.” This court has searched the opinion in West View Hills in vain in an attempt to find any language in it which supports the distinction defendants attempt to make.
The provision in the 1953 agreement “ that no contracts of employment are to be entered into except by the mutual consent of the parties hereto ” (par. 3[c]) likewise contains no prohibition, direct or indirect, against the president’s defending or instituting suit in the name of the corporation. That provision is found in a paragraph of the 1953 agreement in which Lasker, Moreida and Jacobs “ mutually agrees with each other ”. The corporations were not parties to that covenant and it says nothing of the president’s power over litigation. Whatever, therefore, the precise meaning to be afforded to that provision— and the court agrees with defendants’ interpretation that it includes at-will contracts — it does not prohibit the president from bringing suit in the name of the corporation and, since a corporation must appear by attorney (Civ. Prac. Act, § 236), from retaining an attorney to institute the suit.
Since defendants dispute plaintiffs’ claim that the by-laws of all three plaintiff corporations were the same as those of Fur Storage, the court has not based its decision on any by-law provision. Nevertheless, since the parties have devoted some attention to the by-laws of Fur Storage, the court observes that such light as they shed on the subject reflects the president’s power to sue.
First, as to the provision that ‘ ‘ The President shall appoint and remove, employ and discharge and fix the compensation of all servants, agents, employees and clerks of the corporation other than the duly elected officers, subject to the approval of the Board of Directors.” Defendants’ argument that this requires prior approval, not subsequent abortive disapproval — • in view of the unanimity requirements — seems to overlook one significant point. The by-laws of Fur Storage were apparently adopted in 1946, at a time when majority director action was the only action -which could legally be required. (Benintendi v. Kanton Hotel, 294 N. Y. 112, 119-120 [1945].) The change in that law was effected by the amendment of subdivision 1 of section 9 of the Stock Corporation Law by chapter 261 of the *357 Laws of 1949. To the extent that the hy-law is inconsistent with either the amended certificates of incorporation or the 1953 agreement, the by-law must yield. (Matter of Radiant Knitting Mills, 20 Misc 2d 915, 916 and cases there cited.) When adopted, however, subsequent disapproval of the president’s action by a majority of the board would have been sufficient to nullify his action.
Secondly, as to the by-law provision that “ He [the president] shall sign and make all contracts and agreements in the name of the corporation and see that they are properly carried out.” To the extent that this provision is read as authorizing the president to enter into contracts of employment without the mutual consent of all parties, it may be inconsistent with the provision in paragraph 3(c) of the 1953 agreement and, if so, must fall. (Matter of Radiant Knitting Mills, supra.) But a corporation enters into many contracts other than .those of employment, and to the extent that the provision empowers, indeed enjoins, the president to see that contracts and agreements, validly entered into, are ‘ ‘ properly carried out ’ ’, there is no inconsistency whatever. The 1953 agreement was one agreement which was made by Lasker, as president, in the name of all three corporations, upon the mutual consent of all parties. He is, accordingly, under a duty to see that it is “ properly carried out.” Defendants’ contention that the purpose of this provision was simply to authorize the president to oversee the day-to-day carrying out of contracts finds as little support in the language of the provision as does plaintiffs’ argument with respect to the “ no contracts of employment ” provision in the 1953 agreement. To see that a contract is properly carried out is necessarily to see that its provisions are enforced, by arbitration, when the contract so provides (Matter of Paloma Frocks [Shamokin], 3 N Y 2d 572, 575), or, when it does not, by court action.
Since, therefore, the court is of the opinion that there is no pr ovision in any by-law or other document, or action by the board of directors, prohibiting the president from instituting this action, branches (1) and (2) of defendants’ motion are denied. Branch,(3) of the motion, i.e., to dismiss for legal insufficiency each cause of action asserted on behalf of the individual plaintiffs, is granted as to the first cause of action, under which said plaintiffs seek to obtain a declaratory judgment. (Jos. H. Carter, Inc. v. Carter, 205 Misc. 192, affd. 283 App. Div. 858, cited with approval in Matter of Burkin [Katz], 1 N Y 2d 570, 575; Vacuumatic, Ltd. v. Vacuumatic North America, 10 A D 2d 624, modfg. 22 Misc 2d 519.) While there is a distinction *358 between the relief sought under that cause of action and the relief sought by plaintiff in the Carter case, the one crucial fact common to both cases is that the basic wrong charged is breach of contract. As stated by Mr. Justice Eder in the Carter case (p. 196): “ The agreement attached to the amended complaint clearly defines the rights, duties and obligations of the parties; there is no ambiguity therein which requires clarification by a declaratory judgment and hence there is no basis for this action. ’ ’ Such is the situation here. In all other respects, this branch of the motion is denied.
Branch (4) of the motion, i.e., to compel plaintiffs separately to state and number their causes of action is granted. (North Amer. Iron & Steel Co. v. Lefkowitz, 7 A D 2d 647; Hatch v. Visual Enterprises, 279 App. Div. 1083; Grobman v. Freiman, 3 Misc 2d 656, 660.) In repleading, however, plaintiffs may plead any cause of action belonging to all three plaintiff corporations as a single cause of action, as they may any cause of action in which the rights of all of the plaintiffs, corporate as well as individual, are basically the same. (Cf. North Amer. Iron & Steel Co. v. Lefkowitz, supra.)
Plaintiffs may serve an amended complaint within 20 days after service of a copy of the order to be entered hereon, with notice of entry.